## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Yvonne Gipson, Robin E. Figas, *on behalf of themselves and all others similarly situated*,<br>    Plaintiffs,<br><br>           v. | Case No. 0:08-cv-04546-DSD-FLN |
| Wells Fargo & Company, Wells Fargo Bank, N.A., Employee Benefit Review Committee, *and* John Does 1-20, *et al.* | **AMENDED CLASS ACTION COMPLAINT** |
|     Defendants. | |

This action involves the Wells Fargo & Company 401(k) Plan (the "401(k) Plan"), which is sponsored by Wells Fargo & Company ("Wells Fargo"). Plaintiffs Yvonne Gipson and Robin E. Figas allege the following on behalf of themselves and a class of similarly-situated participants in the 401(k) Plan, and all predecessor plans including the Wells Fargo Financial Thrift and Profit Sharing Plan.

## I. NATURE OF THE ACTION

1.    This case is about self-dealing and imprudent investment of pension plan assets.  The Employee Benefit Review Committee (the "Benefit Committee"), on information and belief comprised of Wells Fargo officers and employees, was responsible for selecting and monitoring 401(k) Plan investments.  The Benefit Committee also was responsible for selecting service providers to the 401(k) Plan such as trustees.  As a fiduciary for the 401(k) Plan, the Benefit Committee (and its members) was required by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, to act prudently and solely in the interest of the 401(k) Plan and its participants and beneficiaries when selecting investments, products, and services for the 401(k) Plan. It

did not do so. Instead, it put Wells Fargo's interests ahead of the 401(k) Plan's interests by choosing investment products and pension plan services offered and managed by Wells Fargo subsidiaries and affiliates, which generated substantial revenues for Wells Fargo at great cost to the 401(k) Plan.

2. Purportedly acting on behalf of the 401(k) Plan, the Benefit Committee chose mutual funds established, offered, and advised by Wells Fargo Funds Management LLC ("Wells Funds Management") under the Wells Fargo Advantage Funds brand, including: Wells Fargo Diversified Small Cap Fund; Wells Fargo Diversified Equity Fund; Wells Fargo Large Company Stock Fund; Wells Fargo Growth Balanced Fund; Wells Fargo Moderate Balanced Fund; Wells Fargo Aggressive Allocation Fund (formerly Wells Fargo Strategic Growth Allocation Fund); and Wells Fargo Conservative Allocation Fund (formerly Wells Fargo Strategic Income Fund) (collectively "Wells Funds"). The Benefit Committee also chose trustee services provided by Wells Fargo Bank, N.A. ("Wells Bank"). These entities were affiliates or subsidiaries of Wells Fargo during the Class Period (November 2, 2001 to the present).

3. By selecting Wells Funds, the Benefit Committee placed Wells Fargo's interests above the 401(k) Plan's interests. Instead of selecting investments for the 401(k) Plan based on objective criteria like fees and performance, the Benefit Committee selected Wells Funds because those funds generated substantial revenues for Wells Fargo. Unaffiliated investment products, however, do not generate any fees for Wells Fargo. So, the Benefit Committee chose Wells Funds to benefit Wells Fargo, the sponsor of the 401(k) Plan.

4.    The Benefit Committee also caused the 401(k) Plan to contract with Wells Bank for trustee services.

5.    This is a civil enforcement action under the ERISA, and in particular under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the 401(k) Plan caused by the Benefit Committee's breaches of fiduciary duty and violations of ERISA's prohibited transactions provisions.

6.    This class action is brought on behalf of the 401(k) Plan and its approximately 164,000 participants for losses to the 401(k) Plan caused by the Benefit Committee's conflicted and imprudent selection of investments and services for the 401(k) Plan. Plaintiffs seek to represent the following class:

> Participants in the Wells Fargo & Company 401(k) Plan ("401(k) Plan") whose 401(k) Plan accounts had a balance in any one of the following funds from November 2, 2001 to the present (the "Class Period"): Wells Fargo Diversified Small Cap Fund; Wells Fargo Diversified Equity Fund; Wells Fargo Large Company Stock Fund; Wells Fargo Growth Balanced Fund; Wells Fargo Moderate Balanced Fund; Wells Fargo Aggressive Allocation Fund (formerly Wells Fargo Strategic Growth Allocation Fund); and Wells Fargo Conservative Allocation Fund (formerly Wells Fargo Strategic Income Fund).

7.    The Benefit Committee, which is a fiduciary of the 401(k) Plan, violated ERISA § 406, 29 U.S.C. § 1106, which prohibits transactions between a plan and related parties, by causing the 401(k) Plan to invest in Wells Funds and purchase investment management and other products and services from Wells Fargo subsidiaries and affiliates.

8.    The Benefit Committee also violated ERISA § 404, 29 U.S.C. § 1104 by failing to act solely in the interest of the 401(k) Plan and its participants and beneficiaries of the 401(k) Plan and failing to exercise the required care, skill, prudence, and diligence

3

in investing the assets of the 401(k) Plan. The Benefit Committee caused the 401(k) Plan to purchase shares, units, or interests in Wells Funds, which funds charged significantly higher fees than comparable, unaffiliated funds, while offering mediocre returns. In other words, the Benefit Committee placed the company's interest in generating fees ahead of the 401(k) Plan's interest in making prudent investments at reasonable cost.

9.     The Benefit Committee's breaches of fiduciary duty caused losses to the 401(k) Plan for which the Benefit Committee and its members are liable to the 401(k) Plan and its participants pursuant to §§ 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2).

10.     Wells Bank is liable pursuant to §§ 405(a)(1),(3), 409, and 502(a)(2) of ERISA, 29 U.S.C. §§ 1105(a)(1), (3), 1109 and 1132(a)(2) because it is a co-fiduciary of the 401(k) Plan and knowingly participated in the Benefit Committee's breaches by transacting with the 401(k) Plan and made no effort to remedy the Benefit Committee's breaches.

11.     Wells Fargo knowingly participated in and benefited from the Benefit Committee's violations of ERISA and is liable under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Accordingly, Wells Fargo should disgorge all revenues earned from 401(k) Plan business and profits earned by Wells Fargo on those revenues.

## II. JURISDICTION AND VENUE

12.     ERISA provides for exclusive federal jurisdiction over these claims. The 401(k) Plan is an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of § 3(7) of ERISA,

4

29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to bring the present action on behalf of the participants and beneficiaries of the Salaried Plan to obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

14. This Court has personal jurisdiction over defendants because the Court has subject matter jurisdiction under ERISA.

15. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

### III. PARTIES

**A.    Plaintiffs.**

16. **Plaintiff Yvonne Gipson ("Gipson").** Plaintiff Gipson is a resident of Annapolis, MD. Plaintiff Gipson also maintains a place of business at 2808 Douglas Street, N.E., Washington, D.C. 20018-1553. Plaintiff Gipson is a participant in the 401(k) Plan. She is a former employee of Wells Fargo who may become eligible to receive a benefit from the 401(k) Plan should she prevail on her claim that Defendants' violations of ERISA caused losses to the 401(k) Plan because losses restored to the 401(k) Plan would increase the amount of benefits to which Gipson is entitled. During the Class Period, Gipson's 401(k) Plan account invested in the following Wells Funds: Wells Fargo Diversified Equity Fund; Wells Fargo Large Company Stock Fund; and

Wells Fargo Aggressive Allocation Fund (formerly Wells Fargo Strategic Growth Allocation Fund).

17. **Plaintiff Robin E. Figas ("Figas").** Figas is a resident of Fortuna, California. She is an employee of Wells Fargo and participant with a current account balance in the 401(k) Plan. During the Class Period, Figas's 401(k) Plan account invested in the following Wells Funds: Wells Fargo Large Company Stock Fund.

**B. Defendants.**

18. **Defendant Wells Fargo & Company ("Wells Fargo").** Wells Fargo is the sponsor of the 401(k) Plan and, thus, by definition, a party in interest to the 401(k) Plan under ERISA.

19. **Defendant Wells Fargo Bank, N.A. ("Wells Bank").** Wells Bank is a federally-chartered bank and wholly-owned subsidiary of Wells Fargo. Wells Bank is the trustee of the 401(k) Plan. Wells Bank holds and invests the assets of the 401(k) Plan.

20. **Defendant Employee Benefit Review Committee ("Benefit Committee").** The Benefit Committee selects the investments offered under the 401(k) Plan. The Benefit Committee's members are appointed by the Board of Directors of Wells Fargo.

21. **Doe Defendants.** Doe Defendants include individual members of the Benefit Committee and other fiduciaries and parties in interest whose names and identities are not presently known to plaintiff.

6

## IV. **FACTUAL BACKGROUND**

A.     **The 401(k) Plan.**

22.     The 401(k) Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).   Pursuant to ERISA, the relief requested in this action is for the benefit of the 401(k) Plan.

23.     The 401(k) Plan covers eligible employees of Wells Fargo and its subsidiaries and affiliates.

24.     Wells Fargo is the sponsor of the 401(k) Plan.

25.     The Benefit Committee is responsible for selecting 401(k) Plan investment options and service-providers.

26.     Wells Bank is the Trustee for the 401(k) Plan.  The 401(k) Plan pays fees, directly or indirectly, to Wells Bank.  Wells Bank holds and invests the assets of the 401(k) Plan.

27.     The 401(k) Plan has invested, pursuant to the direction of the Benefit Committee, billions of dollars in Wells Funds, which investments have generated millions of dollars of investment advisory and other fees for Wells Fargo.  During the Class Period, the 401(k) Plan's investment in Wells Funds averaged almost $1.45 billion a year.

28.     The 401(k) Plan's investments in Wells Funds substantially under-performed similar products available from unaffiliated investment managers and resulted in tens of millions of dollars in losses to the 401(k) Plan.

7

**B.     Defendants Are Fiduciaries And Parties In Interest.**

29.     ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

30.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

31.     The Benefit Committee and its members are fiduciaries to the 401(k) Plan and owe fiduciary duties to the 401(k) Plan and its participants under ERISA in the manner and to the extent set forth in the documents governing the 401(k) Plan, through their conduct, and under ERISA.

32.     The Benefit Committee and its members exercise discretionary authority and control over the 401(k) Plan by, among other things, determining and overseeing the 401(k) Plan's investments, policies, and performance, as well as the performance of other fiduciaries to the 401(k) Plan. The duties of the Benefit Committee and its members include selecting, monitoring, and deleting the 401(k) Plan's investments.

33.     On information and belief, the members of the Benefit Review Committee are officers and employees of Wells Fargo.

34.     Wells Fargo is the sponsor of the 401(k) Plan and, thus, by definition a party in interest.

8

35.     Wells Bank is the trustee for the 401(k) Plan and, thus, by definition a fiduciary of the 401(k) Plan.

**C.     Defendants' ERISA Violations.**

36.     Among other things, the Benefit Committee and its members are responsible for selecting investments and service-providers for the 401(k) Plan, which selections must be made prudently and solely in the interest of the 401(k) Plan's participants and beneficiaries.

37.     The Benefit Committee and its members had the sole discretion to select the investments available under the 401(k) Plan.     Over many years, the Benefit Committee and its members used that discretion to direct billions of dollars of 401(k) Plan assets into Wells Funds.

38.     Wells Fargo subsidiaries and affiliates, chiefly Wells Funds Management and Wells Bank, received tens of millions of dollars in annual fees from the 401(k) Plan.

39.     The Benefit Committee and its members knew or should have known by virtue of their senior positions at a large financial services company that better-performing, lower cost, comparable investment funds and retirement trustee services were available from unaffiliated entities.

40.     Each one of the Wells Funds charged higher expenses and fees than comparable mutual funds offered by an unaffiliated fund family, the Vanguard Group, Inc.

41.     The 401(k) Plan's investments in the Wells Funds were prohibited transactions under ERISA, as were the payment of fees to other Wells Fargo subsidiaries

9

and affiliates like Wells Bank.

42.     The 401(k) Plan has suffered millions of dollars a year in losses because the Benefit Committee and its members forced the 401(k) Plan to invest billions of dollars in Wells Funds, which resulted in millions of dollars of revenue for Wells Fargo while delivering poor investment returns for the 401(k) Plan. During the Class Period, the portfolio of Wells Funds held by the 401(k) Plan under-performed a comparable portfolio of mutual funds offered by an unaffiliated fund family, the Vanguard Group, Inc., by \$168,000,000.00. During the Class Period, a comparable portfolio of Vanguard mutual funds outperformed the 401(k) Plan's Wells Funds portfolio by 8%.

43.     Defendants also failed to select the lowest-cost share class within each Wells Fund for the 401(k) Plan. Like most mutual funds, Wells Funds offer several share classes to investors.    Specifically, Wells Funds offer Class A, Class B, Class C, Administrator Class, Institutional Class, and Investor Class shares, with varying fees and sales charges. The 401(k) Plan invested in Administrator Class shares. Administrator Class shares are offered primarily for direct investment by institutions such as pension and profit sharing plans, employee benefit trusts, endowments, foundations and corporations. Institutional Class shares also are offered primarily for direct investment by institutions such as pension and profit sharing plans, employee benefit trusts, endowments, foundations and corporations.

44.     Although both the Administrator Class and Institutional Class shares are offered to defined contribution plans like the 401(k) Plan, Administrator Class shares are generally purchased by the small plan market and require a minimum plan size of \$10

million. Institutional Class shares are marketed to larger plans and require a minimum plan size of $100 million. As of December 31, 2007, the 401(k) Plan held over $12 billion in assets. And in 2001, the 401(k) Plan held over $6 billion in assets. Thus, the 401(k) Plan satisfied the minimum plan size for Institutional Class shares throughout the Class Period. In fact, the 401(k) Plan maintained an average balance of over $100 million per year in each of six Wells Funds, and over $50 million in two other Wells Funds.

45.     Institutional Class shares had lower expenses and better returns during the Class Period than Administrator Class shares. For example, as of 2008, the Management Expense Ratios ("MER") for the Institutional Class and Administrator Class of the Large Company Growth Fund were, respectively, .75% and .95% (or 75 and 95 basis points where one basis point equals one one-hundredth of one percent), a difference of over twenty percent. The same is true of the Capital Growth Fund (75 basis points versus 94 basis points) and the Growth Equity Fund (105 basis points versus 125 basis points). And for each of these three Wells Funds, the Institutional Class shares generated better returns than the Administrator Class shares during the Class Period.

46.     In addition, prior to April 11, 2005, the administrative expenses (one component of the MER) for the Administrator Class shares of the Large Company Growth, Diversified Equity, and Diversified Small Cap funds were 20 basis points annually, whereas the administrative expenses for the Institutional Class shares of those same funds prior to April 11, 2005 were only 10 basis points. Thus, the Defendants caused the 401(k) Plan to forego millions of dollars in returns and pay millions of dollars

11

in excess fees annually simply by selecting Administrator Class shares instead of Institutional Class shares.

47. Without the "critical mass" or "seed money" provided by the Plans' investments in Wells Funds, Wells Fargo would not have been able to attract other investors to Wells Funds and maintain an investment management business. The Defendants knew this and ensured that the 401(k) Plan invested heavily in Wells Funds. Indeed, the 401(k) Plan was the largest pension plan investor in the Administrator class of shares for every Wells Fund in which the 401(k) Plan invested, as Figure 1 below illustrates.

Figure 1

| Mutual Fund | Percent of Administrator Class Shares Owned by 401(k) Plan as of January 2008 |
|---|---|
| Diversified Equity Fund | 43.14% |
| Large Company Growth Fund | 39.92% |
| Conservative Allocation Fund | 23.34% |
| Growth Balanced-Equity Fund | 16.35% |
| Aggressive Allocation Fund | 56.62% |
| Moderate Balanced Fund | 30.83% |
| Capital Growth Fund | 18.53% |
| Diversified Small Cap Fund | 63.40% |

48.     As Table 1 reflects, the 401(k) Plan is by far the single largest investor in each of the Wells Funds listed above. Were it not for the 401(k) Plan being controlled by Defendants, all employees of Wells Fargo, the 401(k) Plan would have done what most large plans do—not invest in Wells Funds.

49.     Although mutual fund expenses and fees are paid directly by the mutual fund to various Wells Fargo affiliates, the fees are nevertheless paid indirectly by the 401(k) Plan and the payment of such fees had a direct and detrimental impact on the value of the 401(k) Plans' assets as earnings for the Wells Funds were passed on to investors net of fees. As United States Department of Labor studies have recognized, the

> [e]xpenses of operating and maintaining an investment portfolio that are debited against the participant's account constitute an opportunity cost in the form of foregone investments in every contribution period. The laws of compound interest dictate that these small reductions in investment are magnified greatly over the decades in which many employees will be 401(k) plan participants. ... The effect of ... higher levels of expenses would be to reduce the value of potential future account balances for these participants.

*Study of 401(k) Plan Fees and Expenses* (Apr. 13, 1998) ("Fee Study") (available at http://www.dol.gov/ebsa/pdf/401krept.pdf.)   Applied to a multi-billion dollar portfolio over several years, the compounded opportunity cost of excessive fees causes substantially reduced pension plan assets.

50.     The effect of excess fees on retirement savings is quite significant. Higher fees not only reduce plan assets but hinder the growth of savings through the opportunity costs of having less to re-invest. Under typical assumptions, the effect of an additional 1% in fees can reduce the effective life of a retirees savings balance by ten years.

51.   Figure 2 below illustrates the plan balance of a typical retiree through the working/savings and retirement/spending phases of the portfolio.

Figure 2



52.   Figure 2 considers the portfolio trajectory for a typical employee. In this example, an individual starts saving at age 25 and continues so until age 65. At that time, savings are withdrawn until the balance reaches $0.  As illustrated, the effective life of the assets moves from age 88 to age 78 if fees are increased by 1%.[1]

53.   Further, with billions to invest in investment funds, the Defendants could have negotiated single client or separate account investment funds with essentially the same investment style at substantially lower rates.  Mutual funds generally carry higher expense ratios than competing investment products such as collective trusts or pooled

---

[1] A note about other assumptions in this analysis: The participant earns $40 thousand per year and saves 5% annually towards retirement. Inflation is assumed to be 2.5%, which increases salary and annual contributions accordingly. Investment returns are assumed to be 9%, and at retirement, the participant withdraws 70% of their projected salary on an inflation adjusted basis.

separate accounts. Accordingly, "[v]ery large plans can achieve even greater investment management savings by establishing separate accounts for their 401(k) assets." (*Fee Study.*)

54. Moreover, when a pension plan invests in a single client, collective trust, or pooled separate account fund, the assets of the fund are considered to be plan assets. Thus, a pension plan can seek relief under ERISA if the investment manager mismanages the fund. Mutual fund assets, however, are not plan assets. Therefore a plan cannot sue a mutual fund manager under ERISA for mismanaging the mutual fund. Thus, plan give up valuable ERISA rights and remedies when they invest in mutual funds. The Defendants knew or should have known this, but put Wells Fargo's mutual fund business ahead of the 401(k) Plan's interests.

55. ERISA prohibits a plan from investing in the plan sponsor's investment products or paying the plan sponsor fees for services provided to the plan unless the fiduciary or sponsor can prove that the transactions are exempt. Even if the Benefit Committee and its members can prove the transactions are exempt from ERISA § 406, 29 U.S.C. § 1106, ERISA does not permit such arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted fiduciary would choose differently.

56. Wells Fargo, as plan sponsor, was a party in interest. Wells Fargo, through its Board of Directors, also appointed and monitored the members of the Benefit Committee. Wells Fargo knew or should have known that the Benefit Committee and its members were breaching their duties under ERISA and engaging in prohibited transactions by causing the 401(k) Plan to do business with Wells Fargo subsidiaries and

15

affiliates. In fact, Wells Fargo welcomed and participated in the Plan Administrators' violations of ERISA, and must disgorge all monies received from the 401(k) Plan and profits earned by Wells Fargo thereon.

57. Wells Bank, as trustee for the 401(k) Plan, was a fiduciary to the 401(k) Plan. It benefited from and executed hundreds if not thousands of transactions between the 401(k) Plan and Wells Bank and Wells Funds. Wells Bank knew or should have known that the Benefit Committee and its members were breaching their duties under ERISA and engaging in prohibited transactions by causing the 401(k) Plan to do business with Wells Fargo subsidiaries and affiliates.

58. Plaintiffs were not aware that the Wells Funds charged high fees and delivered poor performance compared to unaffiliated funds until shortly before they filed their complaint. They did not know that the 401(k) Plan's fiduciaries had put Wells Fargo's mutual fund business ahead of the 401(k) Plan's interest in prudent, reasonably-priced investment products. Plaintiffs did not know that by causing the 401(k) Plan to invest in mutual funds, the 401(k) Plan's fiduciaries caused the 401(k) Plan to give up ERISA rights and remedies against the fund managers.

## V. ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS

59. ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —

16

(A)     for the exclusive purpose of

    (i)     providing   benefits   to   participants   and   their
    beneficiaries; and

    (ii)    defraying reasonable expenses of administering the
    plan;

(B)     with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting in a
like capacity and familiar with such matters would use in the
conduct of an enterprise of like character and with like aims;

(C)     by diversifying the investments of the plan so as to minimize
the risk of large losses, unless under the circumstances it is
clearly prudent not to do so; and

(D)     in accordance with the documents and instruments governing
the plan insofar as such documents and instruments are
consistent with the provisions of this title and Title IV.

60.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.

ERISA § 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other
provision of this part, a fiduciary with respect to a plan shall be
liable for a breach of fiduciary responsibility of another fiduciary
with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to
conceal, an act or omission of such other fiduciary, knowing
such act or omission is a breach; or

(2)     if, by his failure to comply with section 404(a)(1) in the
administration of his specific responsibilities which give rise
to his status as a fiduciary, he has enabled such other
fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary,
unless he makes reasonable efforts under the circumstances to
remedy the breach.

61.     Under ERISA, fiduciaries that exercise discretionary authority or control

over the selection of plan investments and the selection of plan service providers must act

prudently and solely in the interest of participants in the plan when selecting investments

and retaining service providers. Thus, "the duty to conduct an independent investigation

into the merits of a particular investment" is "the most basic of ERISA's investment

fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996). As

the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the
> availability, riskiness, and potential return of alternative investments for his
> or her plan. [Where an investment], if implemented, causes the Plan to
> forego other investment opportunities, such investments would not be
> prudent if they provided a plan with less return, in comparison to risk, than
> comparable investments available to the plan, or if they involved a greater
> risk to the security of plan assets than other investments offering a similar
> return.

DoL Ad. Op. No. 88-16A.

62.     Pursuant to these duties, fiduciaries must ensure that the services provided

to the plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must
> act prudently and solely in the interest of the Plan participants and
> beneficiaries both in deciding ... which investment options to utilize or
> make available to Plan participants or beneficiaries. In this regard, the
> responsible Plan fiduciaries must assure that the compensation paid directly
> or indirectly by the Plan to [service providers] is reasonable ... .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

63.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest

of plan participants and beneficiaries. As the Department of Labor has repeatedly

warned:

18

We have construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to, participants and beneficiaries as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

64.     The Department of Labor counsels that fiduciaries are responsible for

ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to

carefully evaluate differences in fees and services between prospective service providers:

While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting   Your   Fiduciary   Responsibilities*   (May   2004)   (available   at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the Department of Labor writes:

> Plan fees and expenses are important considerations for all types of
> retirement plans. As a plan fiduciary, you have an obligation under ERISA
> to prudently select and monitor plan investments, investment options made
> available to the plan's participants and beneficiaries, and the persons
> providing services to your plan. Understanding and evaluating plan fees
> and expenses associated with plan investments, investment options, and
> services are an important part of a fiduciary's responsibility. This
> responsibility is ongoing. After careful evaluation during the initial
> selection, you will want to monitor plan fees and expenses to determine
> whether they continue to be reasonable in light of the services provided.
>
> * * *
>
> By far the largest component of plan fees and expenses is associated with
> managing plan investments. Fees for investment management and other
> related services generally are assessed as a percentage of assets invested.
> Employers should pay attention to these fees. They are paid in the form of
> an indirect charge against the participant's account or the plan because they
> are deducted directly from investment returns. Net total return is the return
> after these fees have been deducted. For this reason, these fees, which are
> not specifically identified on statements of investments, may not be
> immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

65.     A fiduciary's duty of loyalty and prudence require it to disregard plan

documents or directives that it knows or reasonably should know would lead to an

imprudent result, or would otherwise harm plan participants or beneficiaries. ERISA

§ 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan

documents or directives that would lead to an imprudent result or that would harm plan

participants or beneficiaries, nor allow others, including those whom they direct or who

are directed by plan documents to do so.

66.    The general duties of loyalty and prudence imposed by § 404 of ERISA are

supplemented by a detailed list of transactions that are expressly prohibited by § 406 of

ERISA, 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a

high potential for abuse.  Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to
> engage in a transaction, if he knows or should know that such
> transaction constitutes a direct or indirect—
>
> (A)    sale or exchange, or leasing, of any property between the plan
>        and a party in interest;

* * *

> (C)    furnishing of goods, services, or facilities between the plan
>        and a party in interest … .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his
>        own account,
>
> (2)    in his individual or in any other capacity act in a transaction
>        involving the plan on behalf of a party (or represent a party)
>        whose interests are adverse to the interests of the plan or the
>        interests of its participants or beneficiaries …

67.    ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as

the Defendants here, from causing plans to engage in transactions with the plan sponsor,

here Wells Fargo, including causing a plan to invest assets in investment management

and other products offered by a party in interest or plan fiduciary and the payment of

investment management and other fees in connection with such investments.

68.     Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides a cause of

action against a party in interest, such as Wells Fargo, for participating in the breach of a

fiduciary.

69.     Section 405(a) of ERISA, 29 U.S.C. § 1105(a), provides a cause of action

against a fiduciary, such as Wells Bank, for knowingly participating in the breach of a

fiduciary and knowingly failing to cure any breach of duty.

## VI. CLASS ALLEGATIONS

70.     Representative Plaintiffs bring this action on behalf of a class defined as:

> Participants in the Wells Fargo & Company 401(k) Plan ("401(k)
> Plan") whose 401(k) Plan accounts had a balance in any one of
> the following funds from November 2, 2001 to the present (the
> "Class Period"): Wells Fargo Diversified Small Cap Fund; Wells
> Fargo Diversified Equity Fund; Wells Fargo Large Company
> Stock Fund; Wells Fargo Growth Balanced Fund; Wells Fargo
> Moderate Balanced Fund; Wells Fargo Aggressive Allocation
> Fund (formerly Wells Fargo Strategic Growth Allocation Fund);
> and Wells Fargo Conservative Allocation Fund (formerly Wells
> Fargo Strategic Income Fund).

71.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1),

(b)(2), and/or (b)(3).

72.     The class satisfies the numerosity requirement because it is composed of

thousands of persons, in numerous locations. The 401(k) Plan has almost 165,000

participants. The number of class members is so large that joinder of all its members is

impracticable.

73.     Common questions of law and fact include:

A.     Whether defendants caused the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Wells Fargo subsidiaries and affiliates;

B.     Whether the Benefit Committee and its members were fiduciaries responsible for selecting, evaluating, and monitoring the investments of the 401(k) Plan;

C.     Whether defendants caused the 401(k) Plan to pay fees to Wells Fargo subsidiaries and affiliates, including Wells Bank, for trustee, record-keeping, plan administration and other such services and whether such fees were reasonable;

D.     Whether the Benefit Committee and its members breached their fiduciary duties to the 401(k) Plan and engaged in prohibited transactions by causing the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Wells Fargo subsidiaries and affiliates, and whether such fees were reasonable; and

E.     Whether the 401(k) Plan and its participants suffered losses as a result of the Benefit Committee's and its members' fiduciary breaches;

F.     Whether Wells Fargo is liable to disgorge fees collected from the 401(k) Plan and profits earned thereon.

G.     Whether Wells Bank breached its co-fiduciary duties under ERISA by knowingly participating in the Benefit Committee's and its members' fiduciary

breaches and prohibited transactions and failing to take steps to prevent such breaches or prohibited transactions.

74.    Plaintiffs' claims are typical of the claims of the Class.  They have no interests that are antagonistic to the claims of the Class.  They understand that this matter cannot be settled without the Court's approval.  Plaintiffs are not aware of another suit pending against defendants arising from the same circumstances.

75.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to the vigorous representation of the Class.  Plaintiffs' counsel, McTigue & Porter LLP, are experienced in class action and ERISA litigation.  Counsel have agreed to advance the costs of the litigation contingent upon the outcome.  Counsel are aware that no fee can be awarded without the Court's approval.

76.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the class is impracticable.  The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.  Moreover, the Benefit Committee and its members, as fiduciaries of the 401(k) Plan, were obligated to treat all Class members similarly as 401(k) Plan participants under written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiffs are unaware of any difficulty in the management of this action as a class action.

77.    This Class may be certified under Rule 23(b).

24

A.     23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.     23(b)(2).  This action is suitable as a class action under 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

C.     23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## VII. CLAIMS FOR RELIEF

## COUNT I

**Engaging in Prohibited Transactions by Causing the Plans to
Invest in Wells Fargo Affiliated Investment Products and To Purchase
Products and Services Provided by Wells Fargo Subsidiaries and Affiliates
(Violation of § 406 of ERISA, 29 U.S.C. § 1106 by the Benefit Committee)**

78.     Plaintiffs incorporate the allegations contained in the previous paragraphs
of this Complaint as if fully set forth herein.

79.     At all relevant times, the Benefit Committee and its members acted as
fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by
exercising authority and control with respect to the management of the 401(k) Plan and
the 401(k) Plan's assets.

80.     The Benefit Committee and its members, by their actions and omissions in
authorizing or causing the 401(k) Plan to invest in the Wells Funds and purchase Wells
Fargo-affiliated products and services, including Wells Funds, and pay, directly or
indirectly, investment management and other fees in connection therewith, caused the
401(k) Plan to engage in transactions that Committee Defendants knew or should have
known constituted sales or exchanges of property between the 401(k) Plan and parties in
interest, the furnishing of services by parties in interest to the 401(k) Plan, and
transactions with fiduciaries in violation of §§ 406(a)(1)(A), (C), and 406(b), 29 U.S.C.
§§ 1106(a)(1)(A), (C), and 406(b).

81.     As a direct and proximate result of these prohibited transaction violations,
the 401(k) Plan, directly or indirectly, paid millions of dollars in investment management

26

and other fees that were prohibited by ERISA and suffered millions of dollars in losses annually.

82. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Committee Defendants are liable to restore all losses suffered by the Plans as a result of the prohibited transactions and all profits earned by Wells Fargo on the fees paid by the 401(k) Plan to Wells Fargo and its subsidiaries and affiliates.

## COUNT II

### Breach of Duties of Loyalty and Prudence by Causing the 401(k) Plan to Invest in Wells Funds Which Caused Losses to the 401(k) Plan (Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants)

83. Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

84. At all relevant times, the Benefit Committee and its members acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the 401(k) Plan and the 401(k) Plan's assets.

85. The Benefit Committee and its members, by their actions and omissions in authorizing or causing the 401(k) Plan to invest in Wells Funds and purchase products and services from Wells Fargo subsidiaries and affiliates, and to pay investment management and other fees in connection therewith, to Wells Fargo subsidiaries and affiliates, put Wells Fargo's financial interests ahead of the 401(k) Plan's interests. Thus, the Benefit Committee and its members breached their duties of prudence and loyalty to the 401(k) Plan under ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

27

86.     As a direct and proximate result of these breaches of duty, the 401(k) Plan,

and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost

millions of dollars to Wells Fargo fees and inferior returns.

87.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C.

§ 1109(a), the Benefit Committee and its members are liable to restore all losses suffered

by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT III

### Breach of Co-Fiduciary Duty by Knowingly Participating In The Benefit Committee's Breaches of Fiduciary Duty and Prohibited Transactions and Failing to Remedy Breaches of Fiduciary Duty and Prohibited Transactions (Violation of § 405 of ERISA, 29 U.S.C. § 1105 by Wells Bank)

88.     Plaintiffs incorporate the allegations contained in the previous paragraphs

of this Complaint as if fully set forth herein.

89.     At all relevant times, Wells Bank was the trustee and a fiduciary of the

401(k) Plan.

90.     Wells Bank, by its actions and omissions in knowingly participating in the

Benefit Committee's breaches of fiduciary duty and failing to take steps to remedy such

breaches violated ERISA § 405(a)(1), (3), 29 U.S.C. § 1105(a)(1), (3).

91.     As a direct and proximate result of these breaches of duty, the 401(k) Plan,

and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost

millions of dollars to Wells Fargo fees and inferior returns.

92. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Wells Bank is liable to restore all losses suffered by the 401(k) Plan caused by its breaches of co-fiduciary duty.

## COUNT IV

## Wells Fargo Violated ERISA by Knowingly Participating in Breaches of Fiduciary Duty and Prohibited Transactions.
### (§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) by Wells Fargo)

93. Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

94. At all relevant times, Wells Fargo was a party in interest to the 401(k) Plan. Wells Fargo, through its Board of Directors, appointed and monitored the members of the Benefit Committee.

95. Wells Fargo, by its actions in participating in and abetting fiduciary breaches and prohibited transactions, caused the 401(k) Plan to invest in Wells Funds and purchase products and services from Wells Fargo subsidiaries and affiliates, and to pay investment management and other fees in connection therewith, to Wells Fargo subsidiaries and affiliates. A party in interest is subject to liability under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

96. As a direct and proximate result of Wells Fargo's violations of ERISA, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Fargo fees and inferior returns.

97.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) Wells Fargo is liable to disgorge all revenues received from the 401(k) Plan and Wells Fargo's earnings thereon.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.      Declare that the Benefit Committee and its members have violated ERISA's prohibited transactions provisions;

2.      Declare that the Benefit Committee and its members breached their fiduciary duties under ERISA;

3.      Declare that Wells Bank knowingly participated in the Benefit Committee's and its members' violations of ERISA and failed to take steps to remedy those violations;

4.      Declare that Wells Fargo knowingly participated in the Benefit Committee's and its members' violations of ERISA;

5.      Issue an order compelling defendants to disgorge all fees paid and incurred, directly or indirectly, to Wells Fargo subsidiaries and affiliates by the 401(k) Plan, including disgorgement of profits thereon;

6.      Issue an order compelling the Benefit Committee and its members and Wells Bank to restore all losses to the 401(k) Plan arising from their violations of ERISA;

7.      Order equitable restitution and other appropriate equitable monetary relief against Defendants;

8.      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect

to the 401(k) Plan, the appointment of independent fiduciaries to administer the 401(k) Plan, rescission of the 401(k) Plan's investments in Wells Funds and the 401(k) Plan's and contracts with affiliated service providers, and enjoining Defendants from causing the 401(k) Plan to invest in Wells Funds and contract with affiliated service providers;

9.      That this action be certified as a class action and that the Class be designated to receive the amounts restored or disgorged to the 401(k) Plan by Defendants and a constructive trust be established for distribution to the extent required by law;

10.     Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

11.     Award Plaintiffs their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

Award such other and further relief as the Court deems equitable and just.

DATED this 29th Day of August 2008          Respectfully submitted:

*s/Deanna D. Dailey*
Deanna D. Dailey (MN Bar No. 293714)
310 Fourth Avenue South, Suite 600
Minneapolis, MN 55415
ddailey@sprengerlang.com
Telephone: (612) 871-8910
Facsimile: (612) 871-9270

Michael D. Lieder* (DC Bar No. 444273)
Sprenger & Lang PLLC
1400 Eye Street, N.W., Suite 500
Washington, DC 20005
mlieder@sprengerlang.com
Telephone: (202) 265-8010
Facsimile: (202) 332-6652

J. Brian McTigue* (DC Bar No. 475904)
Gregory Y. Porter* (DC Bar No. 458603)
MCTIGUE & PORTER LLP
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC 20015
Tel: (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
gporter@mctiguelaw.com

*Attorneys for Plaintiffs*

* Pro Hac Vice admission requested