UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robin E. Figas, and all                                    Civil No. 08-4546 (PAM/FLN)
others similarly situated,

Plaintiff,

v.                                              **MEMORANDUM AND ORDER**

Wells Fargo & Company, Wells
Fargo Bank N.A., Employee
Benefit Review Committee, and
John Does 1-20, et al.,

Defendants.

_____

This matter is before the Court on Defendants' Motion for Partial Summary Judgment,

Plaintiff's Motion for Class Certification, and Plaintiff's Motion to Strike.

**BACKGROUND**

Plaintiff Robin Figas is an employee of Defendant Wells Fargo & Company ("Wells

Fargo") and a participant in the Wells Fargo employees' 401(k) retirement plan, an ERISA

defined contribution plan. She contends that Defendants violated the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., by mismanaging the

plan. Specifically, she claims that the plan impermissibly invested in mutual funds managed

by Wells Fargo affiliate Wells Fargo Funds Management ("WFFM").

The Second Amended Complaint raises four claims. (Docket No. 91.) Count I claims

that the plan's investment in WFFM funds constitutes a prohibited transaction in violation

of ERISA § 406, 29 U.S.C. § 1106. Count II alleges that this investment was a breach of the

Employee Benefit Review Committee's fiduciary duties, and violated ERISA § 404, 29

U.S.C. § 1104.  Count III claims a breach of fiduciary duties by Wells Fargo Bank (the

"Bank"), and Count IV seeks to hold Wells Fargo liable for abetting the Committee's alleged

breaches of fiduciary duties.

The Second Amended Complaint's class allegations claim the following putative

class:

> Participants in the Wells Fargo & Company 401(k) Plan ("401(k) Plan")
> whose 401(k) Plan accounts had a balance in any one of the following funds
> from November 2, 2001 to the present[1] (the "Class Period"): Wells Fargo
> Diversified Small Cap Fun; Wells Fargo Diversified Equity Fund; Wells Fargo
> Large Company Stock Fund; Wells Fargo Growth Balanced Fund; Wells
> Fargo Moderate Balanced Fund; Wells Fargo Aggressive Allocation Fund
> (formerly Wells Fargo Strategic Growth Allocation Fund); and Wells Fargo
> Conservative Allocation Fund (formerly Wells Fargo Strategic Income Fund).

(2d Am. Compl. ¶ 74.)  However, in her Memorandum in Support of the Motion for Class

Certification ("Class Cert. Supp. Mem."), Figas states her intention to claim a broader class:

"All participants in the Plan (and their beneficiaries) for whose benefit the Plan held assets

at any time from November 2, 2001 through September 30, 2009."  (Class Cert. Supp. Mem.

at 3 & n.1.)  Figas contends that she will seek leave to amend her Complaint to include

allegations about the remaining funds involved in the Plan, (id. at 9), but she has not yet done

so.  The time for amendment as of right has long since passed.  (See Pretrial Schedule Order

(Docket No. 74) (stating that motions to amend pleadings "must be served by September 1,

---

[1] The Second Amended Complaint was filed on September 22, 2009, and thus the
class period runs from November 2, 2001, to that date.

2009").)  Absent the filing of another Amended Complaint, the Second Amended Complaint is the operative pleading in this matter and Figas must be limited to the allegations contained therein.  The Court will consider, therefore, only whether Figas may maintain a class action on behalf of the class outlined in the Second Amended Complaint.

However, the Court will first consider Defendants' Motion for Summary Judgment. A decision on that Motion may affect the factors the Court must determine on the Motion for Class Certification, and thus efficiency mandates consideration of the Motion for Summary Judgment first.

**DISCUSSION**

**A.      Motion for Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may

not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Defendants seek summary judgment on Count I of the Second Amended Complaint, contending that Figas's claims are time-barred.  As noted above, Count I claims that Defendants violated ERISA § 406, 29 U.S.C. § 1106, by causing the plan to invest in Wells Fargo controlled funds and by paying investment management and other fees in connection with those investments.  (2d Am. Compl. ¶ 84.)  Defendants contend that Figas knew as early as 1999, but in any case by 2003, that the plan was investing in Wells Fargo controlled funds and that the plan paid fees to invest in those funds.

ERISA's statute of limitations is found in section 413, 29 U.S.C. § 1113.  There is no dispute that under this section, Figas's section 406 prohibited-transaction claim must be brought either within six years of "the date of the last action which constituted a part of the breach or violation" or within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," whichever is earlier.  29 U.S.C. § 1113(1)-(2).  Defendants argue that the undisputed facts show both that Figas knew of the alleged ERISA violation more than three years prior to the date this lawsuit was filed, and that the last action constituting a prohibited transaction took place more than six years prior to the lawsuit's initiation, so that under either section of the statute of limitations, Figas's claim is time-barred.

The Eighth Circuit has addressed the application of the statute of limitations in the

4

ERISA prohibited-transaction context.  In such a situation, "knowledge of the [prohibited] transaction would be actual knowledge of the breach."  Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 859 (8th Cir. 1999).  Figas contends that she did not know all of the elements of her prohibited-transaction claim, specifically "that Defendants were acting for the benefit of themselves."  (Pl.'s Opp'n Mem. at 2.)  But this knowledge is not part of her prima facie case.  Indeed, she insists that the plan's investments in Wells Fargo controlled funds themselves, without more, are a prima facie violation of ERISA § 406.  Yet she admits that she knew about those investments and, further, that she knew that investment management fees were paid as a result of these investments.  There can be no doubt that Figas had "actual knowledge of the breach" and that she had such knowledge at least by 2003.

Figas argues that the statute of limitations has not run because each new investment in a Wells Fargo fund constitutes a separate violation, and thus there are violations within the limitations period.  She offers no binding authority for this proposition, however, and the Court has found none.  Indeed, the cases she cites are all § 1132 breach-of-fiduciary-duty cases (and in particular, cases alleging failure to exercise prudence in investment decisions), in which each decision to invest in or divest from a particular fund could be viewed as a new breach of duty.  Here, the conduct of which Count I complains is Defendants' decision to invest in Wells Fargo funds.  Figas knew about these investments by 2003, and whether or not the fund made additional investments after that time is beside the point.  Count I is not a breach-of-fiduciary-duty claim, it is a prohibited-transaction claim, and that claim is time-barred and must be dismissed.  Because Figas is the only Plaintiff, the claim is dismissed in

its entirety. Thus, the Court will address the class certification question only as it relates to the remaining claims in the Second Amended Complaint.

## B.    Motion for Class Certification

A plaintiff seeking to certify a class must initially establish that: (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Defendants do not dispute the numerosity and commonality elements of class certification. Defendants argue that class certification is not proper because Figas's claims are not typical of the claims of the class and that Figas is an inadequate class representative.

If Rule 23(a)'s threshold criteria are met, the plaintiff must then show that the action is maintainable under one of the subsections of Rule 23(b). Figas contends that the class may be maintained under any of Rule 23(b)'s subsections, but states her preference for the class to be certified as either a subsection (b)(1) or subsection (b)(2) class. The Court will discuss Rule 23(b)'s requirements in more detail below.

Although the Court does not consider the merits of Figas's substantive claims in assessing a motion for class certification, Figas bears the burden of establishing each prerequisite element to certification. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). In rigorously analyzing whether Figas has met her burden, the Court "may look past the pleadings . . . [to] understand the claims, defenses, relevant facts, and applicable substantive

6

law. . .” Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 549 (D. Minn. 1999) (quoting

Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)); Coopers & Lybrand v.

Livesay, 437 U.S. 463, 469 (1978) (noting that analysis of a class certification motion

“generally involves considerations that are enmeshed in the factual and legal issues

comprising plaintiff’s cause of action”).   Ultimately, because of the fact-specific quality of

the analysis, the Court exercises broad discretion in determining whether or not to certify a

particular class under Rule 23.   See Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979);

Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994).

   1. Rule 23(a)

    a. **Numerosity**

  A class may not be certified unless the proposed class is so large that joinder of all

class members would be “impracticable.”  Fed. R. Civ. P. 23(a)(1).  There is no specific

number of class members that will automatically warrant class certification.  In re Workers

Compensation, 130 F.R.D. 99, 104 (D. Minn. 1990) (Rosenbaum, J.).  Here, Figas contends

that there are more than 160,000 participants in the plan.  (Class Cert. Supp. Mem. at 15.)

As noted, Defendants do not dispute the numerosity element.  The Court finds that Figas has

satisfied the numerosity requirement.

    b. **Commonality**

  Rule 23 does not require that all questions of law and fact are common to every

member of the proposed class.  Rather, the Rule requires only that common questions exist.

The presence of differing legal inquiries and factual discrepancies will not preclude class

certification.  Dirks v. Clayton Brokerage Co. of St. Louis, Inc., 105 F.R.D. 125, 131 (D.

Minn. 1985) (MacLaughlin, J.).  Again, Defendants do not dispute that there are common

questions of law and fact in this matter.  The Court finds that Figas has succeeded in showing

that common questions exist for the purposes of class certification.

        c.     **Typicality**

In order to establish that the claims of the named Plaintiff are typical of the claims of

the class, the named Plaintiff must demonstrate that she has the same or similar grievances

as the members of the class.  In re Workers Compensation, 130 F.R.D. at 105; Tate v.

Weyerhauser Co., 723 F.2d 598, 608 (8th Cir. 1983).  Perfect identity of claims is not

required.  In re Wirebound Boxes Antitrust Litig., 128 F.R.D. 268, 270 (D. Minn. 1989)

(Murphy, J.)  A "strong similarity" between the legal theories of Plaintiff and those of the

class members will satisfy the typicality requirement.  In re Potash Antitrust Litig., 159

F.R.D. 682, 690 (D. Minn. 1995) (Kyle, J.).

Defendants make two general attacks on Figas's typicality.  First, they claim that

Figas cannot make out any claim related to allegedly excessive fees because Wells Fargo

paid for the majority of the fees in her investment account.  Second, they contend that

because some plan participants' investments made more money than the funds Figas points

to as the "best available alternatives," Figas's claims that her account lost money are not

typical of the claims of the class.

Defendants' first argument obscures the nature of Figas's claim.  She does not make

a separate "excessive fee" claim, as Defendants insist.  Rather, her claim is that, by paying

fees to WFFM that were higher than the fees that might have been charged by other, non-Wells Fargo-related funds, the fiduciaries breached their fiduciary duties to the plan and its beneficiaries.  Thus, it does not matter whether Wells Fargo paid some of the fees on Figas's account, or even that Figas might have had a net benefit from Wells Fargo's payment of some fees.  The mere fact that the plan paid some fees to WFFM is, according to Figas, prohibited self-dealing in violation of ERISA.  In that respect, Figas's claims are undoubtedly typical.

Defendants' other contention oversimplifies both the relevant inquiry and Figas's claims.  Defendants contend that, because some members of the class were "winners" and some were "losers," Figas's claims are not typical of the class's claims.  But the cases on which Defendants rely are not on point and are not binding on this Court.  In Defendants' cited authority, there was a clear delineation between winners and losers.  For example, when a company's stock value plummeted after the company revealed that it engaged in bad lending practices, the court found that a plaintiff who sold her stock prior to the revelation could not represent a class of people who had sold after the revelation and incurred harm as a result.  Almonor v. BankAtlantic Bancorp., Inc., 261 F.R.D. 672, 677 (S.D. Fla. 2009).  Another case on which Defendants rely simply does not stand for the proposition for which it was cited, namely that a class of winners and losers cannot be certified.  In re Terazonsin Hydrocholride Antitrust Litig., 223 F.R.D. 666, 674 (S.D. Fla 2004).  Rather, the court in that case refused to certify the class because plaintiffs had failed to come forward with any evidence regarding "winners" and "losers" from the challenged conduct, despite being

9

instructed to do so by the court.

Contrary to Defendants' assertions, each individual plan participant's investment decisions are not necessarily relevant to the typicality inquiry. The claims in the Second Amended Complaint are derivative. In other words, the claims are brought on behalf of the plan itself, not on behalf of each individual who participated in the plan. Thus, the focus is not on each participant's injury or lack thereof, but rather on injury to the plan. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985).

Defendants contend that the Supreme Court's recent decision in LaRue v. DeWolff, Boberg & Associates, 552 U.S. 248 (2008), defeats Figas's claim of typicality. According to Defendants, the LaRue Court held that a participant in a defined contribution plan cannot bring an action on behalf of the plan. In fact, LaRue stands for the opposite proposition. In LaRue, the Supreme Court determined that a participant in a defined contribution plan could bring an action under ERISA § 409 even though he alleged that the breaches of fiduciary duties caused damage only to his account, not to the plan as a whole. Section 409 (29 U.S.C. § 1109) authorizes a plan participant to bring an action on behalf of the plan to recover for breaches of fiduciary duty. The Supreme Court noted that "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." LaRue, 552 U.S. at 256. Thus, whether or not the plaintiff was seeking a remedy on behalf of his own account or on behalf of the plan made no difference—the participant was entitled to bring a § 409 claim regardless.

10

LaRue is irrelevant for another reason: Figas's claims here do not include a § 409 claim. Rather, Figas's remaining claims are brought under §§ 404, 405, and 502. Thus, whatever relevance LaRue might have to the § 409 claims of participants in defined contribution plans, it does not purport to apply to the myriad other ERISA claims a participant may bring.

In any case, the harm Figas alleges here is not merely harm to her own personal account, but rather harm to the plan as a whole. Thus, her claims are very different from those in LaRue or in Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985). The plaintiff in LaRue contended that the plan failed to carry out his personal investment decisions quickly enough, thereby diminishing the value of the assets in his account. In Russell, the plaintiff complained that her claim for disability benefits from a defined benefit plan was not processed quickly enough, causing her harm. Neither one of these plaintiffs was seeking any sort of plan-wide relief. In contrast, Figas seeks only plan-wide relief.

Figas's claims are typical and class certification is appropriate under Rule 23(a)(3).

### d.   **Adequacy**

Figas must next demonstrate that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To do so, she must show that: (1) her counsel is competent to pursue the action; and (2) her interests are not antagonistic to the interests of the class. In re Workers Compensation, 130 F.R.D. at 107. Defendants' arguments on this element are for the most part restatements of their arguments with respect to typicality.

11

Those arguments are discussed previously and warrant no further discussion here. Defendants do not challenge Figas's counsel's competence.

Defendants also contend that Figas is not an adequate representative because she "lacks even the most basic understanding of this lawsuit." (Defs.' Opp'n Mem. at 33.) In addition, Defendants argue that Figas destroyed documents relevant to her claims, thus rendering her vulnerable to a spoliation defense. The spoliation issue is very much in dispute—Figas contends that she threw some documents away after discovering that her garage leaked, the documents were covered in mold, and she could not pry them apart. Whether her actions warrant any type of sanction is beyond the scope of this Motion and the Court will not consider the spoliation issue here.

As for Figas's alleged lack of basic knowledge about her case, Defendants once again overstate the facts. Certainly, Figas is not a lawyer and cannot explain her claims as a lawyer would explain them. But she understands her claims and she professes an intent to be an involved lead plaintiff. ERISA is an area of the law that even lawyers find confusing and difficult to understand. It is not surprising that a lay person such as Figas might not grasp the finer points of the allegations in her lawsuit. The class representative "need not have, and often . . . will not have, personal knowledge of the facts needed to make out a prima facie case." Gentry v. C & D Oil Co., 102 F.R.D. 490, 495 (W.D. Ark. 1984). Indeed, "the depth of a named representative's knowledge is irrelevant." In re Workers Compensation, 130 F.R.D. at 108. In this case, it is clear that Figas possesses enough knowledge to assist her counsel in prosecuting this action. That is all that is required.

12

Figas satisfies the adequacy requirement, and, as such, has established all of the requirements of Rule 23(a).

2.      Rule 23(b)

Next, the Court must consider whether this action meets the requirements of one of the subsections of Rule 23(b).  See Eisen v. Carlyle & Jacquelin, 417 U.S. 156, 163 (1974) (noting that class actions must meet requirements of both Rule 23(a) and Rule 23(b)).  These subsections permit the certification of a class action in three circumstances.

a.      **23(b)(1)**

Under Rule 23(b)(1), class certification is proper when:

> separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications . . . which would establish incompatible standards of conduct for [Defendants], or (B) adjudications with respect to individual members of the class which would . . . be dispositive of the interests of [non-party] members or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(A)-(B).  A class certified under Rule 23(b)(1) does not permit putative class members to opt out of the class.

Although Figas insists that certification under 23(b)(1) is proper because of the risk that Defendants might be subject to differing standards of conduct, all proposed class members in this case are seeking the same relief.  Thus, certification under either of the subsections of Rule 23(b)(1) is not appropriate.  See Baer v. G&T Trucking Co., Civ. No. 03-3460, 2005 WL 563107, at *4 (D. Minn. Mar. 1, 2005) (Magnuson, J.) ("In this case, certification under Rule 23(b)(1) is inappropriate because all of the proposed class members

are seeking the same relief.").

      b.     **23(b)(2)**

A Rule 23(b)(2) class is appropriate when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under this subsection is not appropriate "where monetary relief is sought, unless such monetary relief is incidental to the requested injunctive relief or declaratory relief." Glenn v. Daddy Rocks, Inc., 203 F.R.D. 425, 430 (D. Minn. 2001) (Doty, J.).

Here, there is no doubt that the Second Amended Complaint seeks broad injunctive relief. It also seeks more than $200 million in damages. Given the nature of a 23(b)(2) class, the Court cannot say that the monetary relief she seeks is incidental to the injunctive or declaratory relief. Thus, certification under 23(b)(2) is not appropriate.

      c.     **23(b)(3)**

Rule 23(b)(3) requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting individual members; and (2) a class action is the superior method of adjudicating the controversy. Defendants claim that there are not sufficient common questions because of the purported differences between Figas's investment returns and the returns of other putative class members.

Defendants focus on the alleged "best alternative investment" argument, contending that Figas has named certain Vanguard funds as the alternative investment the plan fiduciaries could have chosen. According to Defendants, the evidence shows that the

14

WFFM-managed funds outperformed the majority of the comparable Vanguard funds for at least portions of the class period. Thus, Defendants argue, Figas's claims that the WFFM-managed funds were bad investments is at best atypical and not common to the entire class, some of whom profited as compared to the Vanguard alternatives. However, Figas insists that she has not designated a best alternative investment, and only mentioned the Vanguard funds as one possible alternative, not the only alternative. Defendants' emphasis on the Vanguard funds is misplaced.

It may be true that some class members did not lose money on their investments, or did not lose as much money as Figas did. However, a breach of fiduciary duty that causes no monetary harm is still a violation of ERISA. See 29 U.S.C. § 1132(a)(3) (allowing suits by participants "to enjoin any act or practice which violates any provision of this subchapter" without specifying that such participants must be damaged by the violation). Thus, the mere fact that participants experienced different investment outcomes is not dispositive to the commonality question. For the purposes of class certification, Figas has established that her claims are common to the claims of the class.

## C.    Motion to Strike

After the briefing on the above Motions was complete, Figas filed a Motion to Strike. This Motion seeks to exclude the testimony of Defendants' expert witness, Lasaad Turki, and asks the Court to strike the declaration of Craig Peifer submitted in opposition to the Motion for Class Certification.

1.      <u>Motion to Exclude Expert</u>

Figas first contends that Turki's testimony is not helpful to the trier of fact, because his conclusion that plan participants experienced different investment outcomes at different times is obvious.  Second, Figas contends that Turki relies on hearsay from an undisclosed source.  Finally, Figas attacks Turki's methodology, claiming that he (or Defendants' lawyers) chose random periods to examine for rate of return, rather than using industry-accepted 3-, 5-, or 10-year periods.

As Defendants point out, calling this Motion a "motion to strike" is improper, because the Rules do not allow for motions to strike matters outside of pleadings.  <u>See</u> <u>Carlson Mktg.</u> <u>Group v. Royal Indemnity Co.</u>, No. 04-cv-3368, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) (Schiltz, J.) ("[T]here is no such thing as a 'motion to strike'—at least when the paper being targeted is a memorandum or affidavit submitted in connection with a motion for summary judgment.").  This Motion is in fact a motion under <u>Daubert v. Merrell Dow</u> <u>Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), seeking to exclude expert testimony.  However, Figas's arguments go to the weight that should be given Turki's testimony and to Turki's credibility, not to the admissibility of his testimony.  The motion to exclude Turki is denied.

2.      <u>Motion to Strike Declaration</u>

In this Motion, Figas contends that the declaration of Craig Peifer contains expert opinions, but that Peifer was not disclosed as an expert witness.  Figas also complains that she did not have time to depose Peifer before filing her reply brief.  She asks the Court to strike the declaration.  Defendants respond that Peifer's declaration is merely the

authentication of the factual information on which Turki relied.

Again, a Motion to Strike is not the proper way to challenge an affidavit. More importantly, Peifer's declaration does not contain expert opinions. Figas has not established that striking the declaration is appropriate, even if such an action were within the contemplation of the Rules.

**E.    Class Counsel**

Finally, Figas asks that her counsel, McTigue & Veis LLP, and Bailey & Glasser LLP be appointed class counsel, and that Sprenger & Lang PLLC be appointed liaison counsel. Defendants have not objected to the appointment of class and liaison counsel.

Rule 23(g) requires the Court to appoint class counsel if a class is certified and sets forth several factors the Court is required to and allowed to consider in making that appointment. The Court must consider putative class counsel's work, experience, knowledge, and resources, and also whether counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4). The Court concludes from Figas's submissions in support of this request, as well as from counsel's prosecution of the Motion for Class Certification and opposition to the Motion for Summary Judgment, that putative class counsel are knowledgeable, experienced, and have the resources to commit to representing the class. Counsel have worked to identify and investigate potential claims. Finally, the Court finds that counsel will fairly and adequately represent the interests of the class. The Court therefore finds that the requirements of Rule 23(g) are satisfied, and grants Figas's request for the appointment of class and liaison counsel.

17

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1.      Plaintiff's Motion to Strike (Docket No. 139) is **DENIED**;

2.      Defendants' Motion for Summary Judgment (Docket No. 114) is **GRANTED**;

3.      Count I of the Second Amended Complaint is **DISMISSED with prejudice**;

4.      Plaintiff's Motion for Class Certification (Docket No. 101) is **GRANTED**;

5.      This action is certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), with respect to all claims remaining in the case including liability and damages, for a class consisting of:

>        Participants in the Wells Fargo & Company 401(k) Plan (the "Plan") whose Plan accounts had a balance in any one of the following funds from November 2, 2001, to September 22, 2009: Wells Fargo Diversified Small Cap Fun; Wells Fargo Diversified Equity Fund; Wells Fargo Large Company Stock Fund; Wells Fargo Growth Balanced Fund; Wells Fargo Moderate Balanced Fund; Wells Fargo Aggressive Allocation Fund (formerly Wells Fargo Strategic Growth Allocation Fund); and Wells Fargo Conservative Allocation Fund (formerly Wells Fargo Strategic Income Fund).

6.      Pursuant to Fed. R. Civ. P. 23(g), the law firms of McTigue & Veis LLP and Bailey & Glasser LLP are hereby appointed class counsel, and Sprenger & Lang PLLC is hereby appointed liaison counsel.


Dated:   April 6, 2010

                                                  s/Paul A. Magnuson
                                                 Paul A. Magnuson
                                                 United States District Court Judge

18