# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Robin E. Figas,<br>*and all others similarly situated*,<br><br>      Plaintiffs,<br><br>           v.<br><br>Wells Fargo & Company, Employee Benefit Review Committee, Howard I. Atkins, Patricia Callahan, Ellen Haude, Mike Heid, Clyde Ostler, Tim Sloan, John G. Stumpf, Peter J. Wissinger, and Doe Defendants 1-20.<br><br>      Defendants. | Civil File No. 08-CV-4546<br>(PAM/FLN)<br><br><br>THIRD AMENDED<br>CLASS ACTION COMPLAINT |

# TABLE OF CONTENTS

I.     NATURE OF THE ACTION ...........................................................................1

II.    JURISDICTION AND VENUE ....................................................................5

III.   PARTIES ......................................................................................................6

       A.     Plaintiff. ...........................................................................................6

       B.     Defendants. .......................................................................................6

IV.    FACTUAL BACKGROUND..........................................................................9

       A.     The 401(k) Plan. ...............................................................................9

       B.     Defendants Are Fiduciaries And Parties In Interest...........................11

       C.     Defendants' ERISA Violations. .........................................................12

V.     ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS
       ...................................................................................................................23

VI.    CLASS ALLEGATIONS ..............................................................................29

VII.   CLAIMS FOR RELIEF ................................................................................33

       COUNT I ......................................................................................................33

       Engaging in Prohibited Transactions by Causing the Plans to Invest in
       Wells Fargo Affiliated Investment Products (Violation of § 406 of
       ERISA, 29 U.S.C. § 1106 by the Committee Defendants)

       COUNT II ......................................................................................................35

       Breach of Duties of Loyalty and Prudence by Causing the 401(k) Plan to
       Invest in Wells Funds Which Caused Losses to the 401(k) Plan
       (Violation of § 404 of ERISA, 29 U.S.C. § 1104 by the Committee
       Defendants)

       COUNT III......................................................................................................36

       Breach of Co-Fiduciary Duty by Knowingly Participating In The Benefit
       Committee's Breaches of Fiduciary Duty and Prohibited Transactions
       and Failing to Remedy Breaches of Fiduciary Duty and Prohibited
       Transactions

(Violation of § 405 of ERISA, 29 U.S.C. § 1105 by Wells Fargo)

COUNT IV ...................................................................................38

Wells Fargo Violated ERISA by Knowingly Participating in Breaches of
Fiduciary Duty and Prohibited Transactions.
(§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) by Wells Fargo)

COUNT V .....................................................................................39

(In the alternative) Breach of Duties of Loyalty and Prudence by Wells
Fargo for the period from November 2, 2001 through July 31, 2005 by
Causing the 401(k) Plan to Invest in Wells Funds (Violation of § 404 of
ERISA, 29 U.S.C. § 1104)

COUNT VI ....................................................................................40

Breach of Fiduciary Duties of Prudence and Loyalty by Wells Fargo for
the Period from November 2, 2001 through July 31, 2005 (Violation of
§§ 404  of ERISA, 29 U.S.C. § 1104)

VIII. PRAYER FOR RELIEF ................................................................41

This action involves the Wells Fargo & Company 401(k) Plan (the "401(k) Plan"), which is sponsored by Wells Fargo & Company ("Wells Fargo").  Plaintiff Robin E. Figas alleges the following on behalf of herself and a class of similarly-situated participants in the 401(k) Plan, and all predecessor plans, including the Wells Fargo Financial Thrift and Profit Sharing Plan.

## I. <u>NATURE OF THE ACTION</u>

1.     This case is about self-dealing and imprudent investment of pension plan assets.  The Employee Benefit Review Committee (the "Benefit Committee"), comprised of Wells Fargo officers and employees, was responsible for selecting and monitoring 401(k) Plan investments.  As a fiduciary for the 401(k) Plan, the Benefit Committee (and its members) was required by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, to act prudently and solely in the interest of the 401(k) Plan and its participants and beneficiaries when selecting investment funds for the 401(k) Plan.  It did not do so.  Instead, it put Wells Fargo's interests ahead of the 401(k) Plan's interests by choosing investment funds managed by Wells Fargo subsidiaries and affiliates, which generated substantial revenues for Wells Fargo at great cost to the 401(k) Plan.

2.     Purportedly acting on behalf of the 401(k) Plan, the Benefit Committee chose  mutual funds established, offered, and advised by Wells Fargo Funds Management LLC ("Wells Funds Management") under the Wells Fargo

1

Advantage Funds brand, including:  Wells Fargo Diversified Small Cap Fund; Wells Fargo Diversified Equity Fund; Wells Fargo Large Company Growth Fund; Wells Fargo Growth Balanced Fund; Wells Fargo Moderate Balanced Fund; Wells Fargo Aggressive Allocation Fund (formerly Wells Fargo Strategic Growth Allocation Fund); and Wells Fargo Conservative Allocation Fund (formerly Wells Fargo Strategic Income Fund) (collectively "Wells Mutual Funds").  The Benefit Committee also caused the Plan to invest in the Wells Fargo Asset Allocation Fund ("Asset Allocation Collective Trust"), a type of investment called a "collective trust", that was managed by and offered through Wells Fargo Bank, N.A. ("Wells Bank").  (Collectively, the Wells Mutual Funds and the Asset Allocation Collective Trust are the "Wells Funds").  These entities were affiliates or subsidiaries of Wells Fargo during the Class Period (November 2, 2001 to September 30, 2009).

3.     By selecting the Wells Funds, the Benefit Committee placed Wells Fargo's interests above the 401(k) Plan's interests.  Instead of selecting investments for the 401(k) Plan based on objective criteria like fees and performance, the Benefit Committee selected Wells Funds because those funds generated substantial revenues for Wells Fargo.  Unaffiliated investment products, however, do not generate any fees for Wells Fargo.  So, the Benefit Committee chose Wells Funds to benefit Wells Fargo, the sponsor of the 401(k) Plan.

2

4.     This is a civil enforcement action under the ERISA, and in particular under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the 401(k) Plan caused by the Benefit Committee's breaches of fiduciary duty and violations of ERISA's prohibited transactions provisions.

5.     This class action is brought on behalf of the 401(k) Plan and its approximately 164,000 participants for losses to the 401(k) Plan caused by the Benefit Committee's conflicted and imprudent selection, retention, and monitoring of investment vehicles for the 401(k) Plan.  Plaintiff seeks to represent the following class:

> Participants in the Wells Fargo & Company 401(k) Plan whose 401(k) Plan accounts had a balance in any one of the following funds from November 2, 2001 to September 30, 2009 (the "Class Period"):  Wells Fargo Diversified Small Cap Fund; Wells Fargo Diversified Equity Fund; Wells Fargo Large Company Growth Fund; Wells Fargo Growth Balanced Fund; Wells Fargo Moderate Balanced Fund; Wells Fargo Aggressive Allocation Fund (formerly Wells Fargo Strategic Growth Allocation Fund); Wells Fargo Conservative Allocation Fund (formerly Wells Fargo Strategic Income Fund); and the Wells Fargo Asset Allocation Fund (a collective trust).

6.     The Benefit Committee, which is a fiduciary of the 401(k) Plan, violated ERISA § 406, 29 U.S.C. § 1106, which prohibits transactions between a plan and related parties, by causing the 401(k) Plan to invest in the Wells Mutual Funds.

7.     The Benefit Committee also violated ERISA § 404, 29 U.S.C. § 1104 by failing to act solely in the interest of the 401(k) Plan and its participants and beneficiaries of the 401(k) Plan and failing to exercise the required care, skill, prudence, and diligence in investing the assets of the 401(k) Plan.  The Benefit Committee caused the 401(k) Plan to purchase shares, units, or interests in Wells Funds, which funds charged significantly higher fees than comparable, unaffiliated funds, and/or  offered mediocre returns.  In other words, the Benefit Committee placed the company's interest in generating fees ahead of the 401(k) Plan's interest in making prudent investments at reasonable cost.

8.     The Benefit Committee's breaches of fiduciary duty caused losses to the 401(k) Plan for which the Benefit Committee and its members are liable to the 401(k) Plan and its participants pursuant to §§ 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2).

9.     Wells Fargo knowingly participated in and benefited from the Benefit Committee's violations of ERISA and is liable under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  Accordingly, Wells Fargo should disgorge all revenues earned from 401(k) Plan business and profits earned by Wells Fargo on those revenues.

10.     Wells Fargo is also liable for fiduciary breach from at least 1999 through July 31, 2005.  During that period Wells Fargo was a Named Fiduciary of

4

the 401(k) Plan, the 401(k) Plan administrator, and the entity with responsibility for selection and monitoring of 401(k) Plan investment options.  Upon information and belief, Wells Fargo delegated to the Benefit Committee the responsibility for selection and monitoring of 401(k) Plan investment options.  Wells Fargo is liable, during this period, for failure to monitor the performance of the Benefit Committee in selecting and monitoring 401(k) Plan investment options, when it knew or should have known that the Benefit Committee was breaching its duties, but failed to act to prevent the breach.  In the alternative, in the event there was no delegation of responsibility for selection and monitoring of investment options, Wells Fargo is directly liable for the breach as a principal fiduciary.

## II. <u>JURISDICTION AND VENUE</u>

11.     ERISA provides for exclusive federal jurisdiction over these claims. The 401(k) Plan is an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to bring the present action on behalf of the participants and beneficiaries of the 401(k) Plan to obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

12.     This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C.

§ 1132(e)(1).

13.     This Court has personal jurisdiction over defendants because the

Court has subject matter jurisdiction under ERISA.

14.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29

U.S.C. § 1132(e)(2).

### III. PARTIES

**A.     Plaintiff.**

15.     **Plaintiff Robin E. Figas ("Figas").**  Figas is a resident of Fortuna,

California.  She is an employee of Wells Fargo and participant with a current

account balance in the 401(k) Plan.  During the Class Period, Figas's 401(k) Plan

account invested in the following Wells Funds:  Wells Fargo Large Company

Growth Fund and the Asset Allocation Collective Trust.

**B.     Defendants.**

16.     **Defendant Wells Fargo & Company ("Wells Fargo").** Wells Fargo

is the sponsor of the 401(k) Plan and, thus, by definition, a party in interest to the

401(k) Plan under ERISA.  From at least 1999 through July 31, 2005, Wells Fargo

was a Named Fiduciary of the 401(k) Plan, the 401(k) Plan administrator, and the

entity with responsibility under the Plan Document for selection and monitoring of 401(k) Plan investment options.

17. **Defendant Employee Benefit Review Committee ("Benefit Committee").**  The Benefit Committee had responsibility for selection and monitoring of 401(k) Plan investment options, under the Plan Document, from August 1, 2005 to the present.  Upon information and belief, the Benefit Committee was also delegated that responsibility by Wells Fargo from at least 1999 through July 31, 2005.  The Benefit Committee's members are appointed by the Board of Directors of Wells Fargo.  All the individual Defendants in this action were members of the Benefit Committee.

18. **Howard I. Atkins ("Atkins").**  Atkins was a member of the Benefit Committee from at least 2002 through 2005.  As a member of the Committee, Atkins was responsible for selecting and monitoring investments offered under the 401(k) Plan.  As such, he was a fiduciary exercising discretion and control over the 401(k) Plan assets.

19. **Patricia Callahan ("Callahan").** Callahan was a member of the Benefit Committee from at least 2001-2008, and its chairperson for at least some of that period. As a member of the Benefit Committee, Callahan was responsible for selecting and monitoring investments offered under the 401(k) Plan.  As such, she was a fiduciary exercising discretion and control over the 401(k) Plan assets.

7

20.  **Ellen Haude ("Haude")**. Haude was a member of the Benefit Committee from at least 2005 through 2008. As a member of the Benefit Committee, Haude was responsible for selecting and monitoring investments offered under the 401(k) Plan. As such, she was a fiduciary exercising discretion and control over the 401(k) Plan assets.

21.  **Mike Heid ("Heid")**. Heid was a member of the Benefit Committee from at least 2005 through 2008. As a member of the Benefit Committee, Heid was responsible for selecting and monitoring investments offered under the 401(k) Plan. As such, he was a fiduciary exercising discretion and control over the 401(k) Plan assets.

22.  **Clyde Ostler ("Ostler")**. Ostler was a member of the Benefit Committee from at least 2001 through 2008. As a member of the Benefit Committee, Ostler was responsible for selecting and monitoring investments offered under the 401(k) Plan. As such, he was a fiduciary exercising discretion and control over the 401(k) Plan assets.

23.  **Tim Sloan ("Sloan")**. Sloan was a member of the Benefit Committee from at least 2002 through 2008. As a member of the Benefit Committee, Sloan was responsible for selecting and monitoring investments offered under the 401(k) Plan. As such, he was a fiduciary exercising discretion and control over the 401(k) Plan assets.

24.     **John G. Stumpf ("Stumpf")**.  Stumpf was a member of the Benefit Committee from at least 2001 through 2005.  As a member of the Committee, Stumpf was responsible for selecting and monitoring investments offered under the 401(k) Plan.  As such, he was a fiduciary exercising discretion and control over the 401(k) Plan assets.  Stumpf is currently President and Chief Executive Officer of Wells Fargo.

25.     **Peter J. Wissinger ("Wissinger").**  Wissinger was a member of the Benefit Committee from at least 2001 through 2002.  As a member of the Committee, Wissinger was responsible for selecting and monitoring investments offered under the 401(k) Plan.  As such, he was a fiduciary exercising discretion and control over the 401(k) Plan assets.

26.     **Doe Defendants 1-20.**  Doe Defendants include fiduciaries and parties in interest whose names and identities are not presently known to plaintiff.

## IV. <u>FACTUAL BACKGROUND</u>

**A.      The 401(k) Plan.**

27.     The 401(k) Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  Pursuant to ERISA, the relief requested in this action is for the benefit of the 401(k) Plan.

9

28.     The 401(k) Plan covers eligible employees of Wells Fargo and its subsidiaries and affiliates.

29.     Wells Fargo is the sponsor of the 401(k) Plan, and, thus, by definition a party in interest.

30.     Under the operative Plan document, Wells Fargo had responsibility for selecting 401(k) Plan investment options from at least 1999 through July 31, 2005.  The Plan document was amended to give the Benefit Committee responsibility for selecting 401(k) Plan investment options beginning August 1, 2005.  On information and belief, (i) Wells Fargo delegated to the Benefit Committee responsibility for selection and monitoring of 401(k) Plan investment options from at least 1999 through July 31, 2005, and (ii) the Benefit Committee exercised actual discretionary control over selection and monitoring of 401(k) Plan investment options throughout the Class Period.

31.     Wells Bank is the Trustee for the 401(k) Plan.    Wells Bank holds and invests the assets of the 401(k) Plan.

32.     The 401(k) Plan has invested, pursuant to the direction of the Benefit Committee, billions of dollars in Wells Funds, which investments have generated millions of dollars of investment advisory and other fees for Wells Fargo.  During the Class Period, the 401(k) Plan's investment in Wells Funds averaged almost $1.45 billion a year.

10

33. The 401(k) Plan's investments in Wells Funds substantially under-performed similar products available from unaffiliated investment managers and resulted in tens of millions of dollars in losses to the 401(k) Plan.

**B. Defendants Are Fiduciaries And Parties In Interest.**

34. ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

35. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

36. The Benefit Committee and its members are fiduciaries to the 401(k) Plan and owe fiduciary duties to the 401(k) Plan and its participants under ERISA in the manner and to the extent set forth in the documents governing the 401(k) Plan, through their conduct, and under ERISA.

37. The Benefit Committee and its members exercise discretionary authority and control over the 401(k) Plan by, among other things, determining and overseeing the 401(k) Plan's investments, policies, and performance, as well as the performance of other fiduciaries to the 401(k) Plan. The duties of the Benefit

11

Committee and its members include selecting, monitoring, and deleting the 401(k) Plan's investments.

38.     The members of the Benefit Review Committee are officers and employees of Wells Fargo.

39.     Wells Bank is the trustee for the 401(k) Plan and, thus, by definition a fiduciary of the 401(k) Plan.

## C.     Defendants' ERISA Violations.

40.     Among other things, the Benefit Committee and its members are responsible for selecting investments for the 401(k) Plan, which selections must be made prudently and solely in the interest of the 401(k) Plan's participants and beneficiaries.

41.     The Benefit Committee and its members had and exercised discretion to select the investments available under the 401(k) Plan.  Over many years, the Benefit Committee and its members used that discretion to direct billions of dollars of 401(k) Plan assets into Wells Funds.

42.     Wells Fargo subsidiaries and affiliates received tens of millions of dollars in annual fees from the 401(k) Plan.

43.     The Benefit Committee and its members knew or should have known by virtue of their senior positions at a large financial services company that better-

performing, lower cost, comparable investment funds were available from unaffiliated entities.

44.     Each one of the Wells Mutual Funds charged higher expenses and fees than comparable mutual funds offered by an unaffiliated fund family, the Vanguard Group, Inc.

45.     The 401(k) Plan's investments in the Wells Funds were prohibited transactions under ERISA.

46.     The 401(k) Plan has suffered millions of dollars a year in losses because the Benefit Committee and its members forced the 401(k) Plan to invest billions of dollars in the Wells Funds, which resulted in millions of dollars of revenue for Wells Fargo while delivering poor investment returns for the 401(k) Plan. During the Class Period, the portfolio of Wells Funds held by the 401(k) Plan under-performed a comparable portfolio of mutual funds offered by an unaffiliated fund family, the Vanguard Group, Inc., by over $197 million.[1] During the Class Period, a comparable portfolio of Vanguard mutual funds outperformed the 401(k) Plan's Wells Funds portfolio by over 8%.

47.     Defendants also failed to select the lowest-cost share class within each Wells Mutual Fund for the 401(k) Plan. Like most mutual funds, Wells Mutual Funds offer several share classes to investors. Specifically, Wells Mutual Funds

---

[1] Loss estimate figures in this paragraph and paragraph 64 are based on the period 2002-2007.

13

offer Class A, Class B, Class C, Administrator Class, Institutional Class, and Investor Class shares, with varying fees and sales charges. The 401(k) Plan invested in Administrator Class shares. Administrator Class shares are offered primarily for direct investment by institutions such as pension and profit sharing plans, employee benefit trusts, endowments, foundations and corporations. Institutional Class shares also are offered primarily for direct investment by institutions such as pension and profit sharing plans, employee benefit trusts, endowments, foundations and corporations.

48.     Although both the Administrator Class and Institutional Class shares are offered to defined contribution plans like the 401(k) Plan, Administrator Class shares are generally purchased by the small plan market and require a minimum plan size of $10 million. Institutional Class shares are marketed to larger plans and require a minimum plan size of $100 million. As of December 31, 2007, the 401(k) Plan held over $12 billion in assets. And in 2001, the 401(k) Plan held over $6 billion in assets. Thus, the 401(k) Plan satisfied the minimum plan size for Institutional Class shares throughout the Class Period. In fact, the 401(k) Plan maintained an average balance of over $100 million per year in each of six Wells Mutual Funds, and over $50 million in two other Wells Funds.

49.     Institutional Class shares had lower expenses and better returns during the Class Period than Administrator Class shares. For example, as of 2008, the

14

Management Expense Ratios ("MER") for the Institutional Class and
Administrator Class of the Large Company Growth Fund were, respectively, .75%
and .95% (or 75 and 95 basis points where one basis point equals one one-
hundredth of one percent), a difference of over twenty percent.  The same is true of
the Capital Growth Fund (75 basis points versus 94 basis points) and the Growth
Equity Fund (105 basis points versus 125 basis points).  And for each of these
three Wells Funds, the Institutional Class shares generated better returns than the
Administrator Class shares during the Class Period.

50.     In addition, prior to April 11, 2005, the administrative expenses (one
component of the MER) for the Administrator Class shares of the Large Company
Growth, Diversified Equity, and Diversified Small Cap funds were 20 basis points
annually, whereas the administrative expenses for the Institutional Class shares of
those same funds prior to April 11, 2005 were only 10 basis points.  Thus, the
Defendants caused the 401(k) Plan to forego millions of dollars in returns and pay
millions of dollars in excess fees annually simply by selecting Administrator Class
shares instead of Institutional Class shares.

51.     Without the "critical mass" or "seed money" provided by the Plans'
investments in Wells Funds, Wells Fargo would not have been able to attract other
investors to Wells Funds and maintain an investment management business.  The
Defendants knew this and ensured that the 401(k) Plan invested heavily in Wells

15

Funds.  Indeed, the 401(k) Plan was the largest pension plan investor in the

Administrator class of shares for every Wells Mutual Fund in which the 401(k)

Plan invested, as Figure 1 below illustrates.

Figure 1

| Mutual Fund | Percent of Administrator Class Shares Owned by 401(k) Plan as of January 2008 |
|---|---|
| Diversified Equity Fund | 43.14% |
| Large Company Growth Fund | 39.92% |
| Conservative Allocation Fund | 23.34% |
| Growth Balanced-Equity Fund | 16.35% |
| Aggressive Allocation Fund | 56.62% |
| Moderate Balanced Fund | 30.83% |
| Capital Growth Fund | 18.53% |
| Diversified Small Cap Fund | 63.40% |

52.     As Table 1 reflects, the 401(k) Plan is by far the single largest investor in each of the Wells Funds listed above.  Were it not for the 401(k) Plan being controlled by Defendants, all employees of Wells Fargo, the 401(k) Plan would have done what most large plans do—not invest in Wells Funds.

53.     Although mutual fund expenses and fees are paid directly by the mutual fund to various Wells Fargo affiliates, the fees are nevertheless paid indirectly by the 401(k) Plan and the payment of such fees had a direct and detrimental impact on the value of the 401(k) Plans' assets as earnings for the Wells Funds were passed on to investors net of fees.  As United States Department of Labor studies have recognized, the

> [e]xpenses of operating and maintaining an investment portfolio that are debited against the participant's account constitute an opportunity cost in the form of foregone investments in every contribution period. The laws of compound interest dictate that these small reductions in investment are magnified greatly over the decades in which many employees will be 401(k) plan participants. … The effect of … higher levels of expenses would be to reduce the value of potential future account balances for these participants.

*Study of 401(k) Plan Fees and Expenses* (Apr. 13, 1998) ("Fee Study") (available at http://www.dol.gov/ebsa/pdf/401krept.pdf.)  Applied to a multi-billion dollar portfolio over several years, the compounded opportunity cost of excessive fees causes substantially reduced pension plan assets.

54.     The effect of excess fees on retirement savings is quite significant. Higher fees not only reduce plan assets but hinder the growth of savings through the opportunity costs of having less to re-invest.  Under typical assumptions, the effect of an additional 1% in fees can reduce the effective life of a retirees savings balance by ten years.

55.     Figure 2 below illustrates the plan balance of a typical retiree through the working/savings and retirement/spending phases of the portfolio.

Figure 2



56.     Figure 2 considers the portfolio trajectory for a typical employee. In this example, an individual starts saving at age 25 and continues so until age 65. At that time, savings are withdrawn until the balance reaches $0.  As illustrated, the

18

effective life of the assets moves from age 88 to age 78 if fees are increased by 1%.[2]

57.    The Wells Mutual Funds not only had high fees and mediocre returns, they were involved in a legally improper practice known as "directed brokerage" from January 2001 through December 31, 2003.  In directed brokerage, mutual funds pay fund assets in exchange for preferential treatment on sales platforms. They typically pay these assets by directing brokerage trading business to a company that also has a sales platform.  Wells Fargo Investments, LLC ("WFI") offered preferred treatment on their sales platform for mutual fund families that paid them fees during this period.  One of these fund families was the Wells Fargo fund family, including the Wells Mutual Funds.  The investment advisor for the Wells Fargo proprietary funds allocated revenue net of certain expenses to the various Wells Fargo & Co. affiliates, including WFI, based on their sales of Wells Fargo proprietary funds.  WFI has paid a multimillion dollar fine to the industry regulatory authority (NASD) as a result of this misconduct.  Participants suffered losses as a result of having their fund assets directed to WFI and other Wells Fargo entities.

---

[2] A note about other assumptions in this analysis: The participant earns $40 thousand per year and saves 5% annually towards retirement. Inflation is assumed to be 2.5%, which increases salary and annual contributions accordingly. Investment returns are assumed to be 9%, and at retirement, the participant withdraws 70% of their projected salary on an inflation adjusted basis.

58.     The Wells Mutual Funds' participation in this illegal directed brokerage scheme, which diminished their investors returns, in itself made them imprudent investment options for the 401(k) Plan during this period.

59.     Further, with billions to invest in investment funds, the Defendants could have negotiated single client or separate account investment funds with essentially the same investment style at substantially lower rates.  Mutual funds generally carry higher expense ratios than competing investment products such as collective trusts or pooled separate accounts.  Accordingly, "[v]ery large plans can achieve even greater investment management savings by establishing separate accounts for their 401(k) assets."  (*Fee Study*.)

60.     Moreover, when a pension plan invests in a single client, collective trust, or pooled separate account fund, the assets of the fund are considered to be plan assets.  Thus, a pension plan can seek relief under ERISA if the investment manager mismanages the fund.  Mutual fund assets, however, are not plan assets.  Therefore a plan cannot sue a mutual fund manager under ERISA for mismanaging the mutual fund.  Thus, plan give up valuable ERISA rights and remedies when they invest in mutual funds.  The Defendants knew or should have known this, but put Wells Fargo's mutual fund business ahead of the 401(k) Plan's interests.

61.     ERISA prohibits a plan from investing in the plan sponsor's investment products or paying the plan sponsor fees for services provided to the

plan unless the fiduciary or sponsor can prove that the transactions are exempt. Even if the Benefit Committee and its members can prove the transactions are exempt from ERISA § 406, 29 U.S.C. § 1106, ERISA does not permit such arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted fiduciary would choose differently.

62.     Wells Fargo, as plan sponsor, was a party in interest.  Wells Fargo, through its Board of Directors, also appointed and monitored the members of the Benefit Committee.  Wells Fargo knew or should have known that the Benefit Committee and its members were breaching their duties under ERISA and engaging in prohibited transactions by causing the 401(k) Plan to do business with Wells Fargo subsidiaries and affiliates.  In fact, Wells Fargo welcomed and participated in the Plan Administrators' violations of ERISA, and must disgorge all monies received from the 401(k) Plan and profits earned by Wells Fargo thereon.

63.     Plaintiffs were not aware that the Wells Funds charged high fees and delivered poor performance compared to unaffiliated funds until shortly before they filed their complaint.  They did not know that the 401(k) Plan's fiduciaries had put Wells Fargo's mutual fund business ahead of the 401(k) Plan's interest in prudent, reasonably-priced investment products.  Plaintiffs did not know that by causing the 401(k) Plan to invest in mutual funds, the 401(k) Plan's fiduciaries

caused the 401(k) Plan to give up ERISA rights and remedies against the fund managers.

64.     Defendants themselves implicitly acknowledged the advantages of having low-cost Collective Trusts, rather than mutual funds, as investment options in the 401(k) Plan because they did offer one actively managed Collective Trust, the Wells Fargo Asset Allocation Collective Trust, as an investment option in the 401(k) Plan.  However, Defendants' recognition of the advantages of collective trusts in this respect did not help Plan participants because the Benefit Committee, in selecting a collective trust, once again selected one managed by a Wells Fargo affiliate, Wells Bank.  This collective trust was one of the worst performing funds in the Plan, underperforming a comparable Vanguard fund by over $37 million during the Class Period.  As manager of this trust, Wells Bank was a 401(k) Plan fiduciary.

65.     Though no management fees were assessed by the Asset Allocation Collective Trust, Wells Fargo and Wells Bank benefited from the investment of assets in the Trust because they could profit through the process of securities lending, in which securities purchased through Trust assets were lent to other entities.  Though Wells Fargo and Wells Bank benefited from this activity, they did not accept the risk if there were losses.  Thus, when, in 2008, some borrowers of the securities in the Asset Allocation Collective Trust were unable to fulfill their

22

obligations, millions of dollars in losses were incurred. These losses were

sustained by the Asset Allocation Collective Trust and not Wells Fargo or Wells

Bank. These losses occurred because Wells Bank took on excessive risks in

securities lending process with respect to this fund, in particular accepting as

collateral mortgage-backed securities that declined sharply in value when the real

estate bubble burst.

66. The Asset Allocation Collective Trust's use of this excessively risky

and imprudent securities lending process alone made it an imprudent investment

option for the 401(k) Plan.

## V. ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS

67. ERISA imposes strict fiduciary duties of loyalty and prudence upon

the Defendants as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C.§ 1104(a),

states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)  for the exclusive purpose of
>
> >(i)  providing benefits to participants and their beneficiaries; and
> >
> >(ii)  defraying reasonable expenses of administering the plan;
>
> (B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting

23

in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

68. ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.

ERISA § 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

69. Under ERISA, fiduciaries that exercise discretionary authority or control over the selection of plan investments must act prudently and solely in the interest of participants in the plan. Thus, "the duty to conduct an independent

24

investigation into the merits of a particular investment" is "the most basic of

ERISA's investment fiduciary duties."  *In re Unisys Savings Plan Litig.*, 74 F.3d

420, 435 (3d Cir. 1996).  As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other
> factors, the availability, riskiness, and potential return of alternative
> investments for his or her plan. [Where an investment], if
> implemented, causes the Plan to forego other investment
> opportunities, such investments would not be prudent if they provided
> a plan with less return, in comparison to risk, than comparable
> investments available to the plan, or if they involved a greater risk to
> the security of plan assets than other investments offering a similar
> return.

DoL Ad. Op. No. 88-16A.

70.     Pursuant to these duties, fiduciaries must ensure that the services

provided to the plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries
> must act prudently and solely in the interest of the Plan participants
> and beneficiaries both in deciding … which investment options to
> utilize or make available to Plan participants or beneficiaries. In this
> regard, the responsible Plan fiduciaries must assure that the
> compensation paid directly or indirectly by the Plan to [service
> providers] is reasonable … .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

71.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the

interest of plan participants and beneficiaries.  As the Department of Labor has

repeatedly warned:

> We have construed the requirements that a fiduciary act solely in the
> interest of, and for the exclusive purpose of providing benefits to,

> participants and beneficiaries as prohibiting a fiduciary from
> subordinating the interests of participants and beneficiaries in their
> retirement income to unrelated objectives. Thus, in deciding whether
> and to what extent to invest in a particular investment, a fiduciary
> must ordinarily consider only factors relating to the interests of plan
> participants and beneficiaries in their retirement income. A decision to
> make an investment may not be influenced by [other] factors unless
> the investment, when judged solely on the basis of its economic value
> to the plan, would be equal or superior to alternative investments
> available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

72.     The Department of Labor counsels that fiduciaries are responsible for

ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to

carefully evaluate differences in fees and services between prospective service

providers:

> While the law does not specify a permissible level of fees, it does
> require that fees charged to a plan be "reasonable." After careful
> evaluation during the initial selection, the plan's fees and expenses
> should be monitored to determine whether they continue to be
> reasonable.
>
> In comparing estimates from prospective service providers, ask which
> services are covered for the estimated fees and which are not. Some
> providers offer a number of services for one fee, sometimes referred
> to as a "bundled" services arrangement. Others charge separately for
> individual services. Compare all services to be provided with the total
> cost for each provider. Consider whether the estimate includes
> services you did not specify or want. Remember, all services have
> costs.
>
> Some service providers may receive additional fees from investment
> vehicles, such as mutual funds, that may be offered under an
> employer's plan. For example, mutual funds often charge fees to pay
> brokers and other salespersons for promoting the fund and providing

other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting Your Fiduciary Responsibilities* (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the Department of Labor writes:

> Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

> \* \* \*

> By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

27

73.     A fiduciary's duty of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result, or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by plan documents to do so.

74.     The general duties of loyalty and prudence imposed by § 404 of ERISA are supplemented by a detailed list of transactions that are expressly prohibited by § 406 of ERISA, 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse.  Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A)   sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> * * *
>
> (C)   furnishing of goods, services, or facilities between the plan and a party in interest … .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—

28

> (1)   deal with the assets of the plan in his own interest or for his own account,
>
> (2)   in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries …

75.   ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with the plan sponsor, here Wells Fargo, including causing a plan to invest assets in investment management and other products offered by a party in interest or plan fiduciary and the payment of investment management and other fees in connection with such investments.

76.   Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides a cause of action against a party in interest, such as Wells Fargo, for participating in the breach of a fiduciary.

77.   Section 405(a) of ERISA, 29 U.S.C. § 1105(a), provides a cause of action against a fiduciary, such as Wells Bank, for knowingly participating in the breach of a fiduciary and knowingly failing to cure any breach of duty.

## VI. <u>CLASS ALLEGATIONS</u>

78.   The named Plaintiff brings this action on behalf of a class defined as:

Participants in the Wells Fargo & Company 401(k) Plan whose Plan accounts had a balance in any one of the following funds from November 2, 2001 to September 30, 2009:  Wells Fargo Diversified

Small Cap Fund; Wells Fargo Diversified Equity Fund; Wells Fargo
Large Company Growth Fund; Wells Fargo Growth Balanced Fund;
Wells Fargo Moderate Balanced Fund; Wells Fargo Aggressive
Allocation Fund (formerly Wells Fargo Strategic Growth Allocation
Fund); Wells Fargo Conservative Allocation Fund (formerly Wells
Fargo Strategic Income Fund); and the Wells Fargo Asset Allocation
Fund (a collective trust).

79.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and

(b)(1), (b)(2), and/or (b)(3).

80.     The class satisfies the numerosity requirement because it is composed

of thousands of persons, in numerous locations.  The 401(k) Plan has almost

165,000 participants.  The number of class members is so large that joinder of all

its members is impracticable.

81.     Common questions of law and fact include:

A.     Whether defendants caused the 401(k) Plan to invest its assets

in mutual funds and other investment products offered or managed by Wells

Fargo subsidiaries and affiliates;

B.     Whether the Benefit Committee and its members were

fiduciaries responsible for selecting, evaluating, and monitoring the

investments of the 401(k) Plan;

D.     Whether the Benefit Committee and its members breached their

fiduciary duties to the 401(k) Plan and engaged in prohibited transactions by

causing the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Wells Fargo subsidiaries and affiliates; and

E.     Whether the 401(k) Plan and its participants suffered losses as a result of the Benefit Committee's and its members' fiduciary breaches;

F.     Whether Wells Fargo is liable to disgorge fees collected from the 401(k) Plan and profits earned thereon.

G.     Whether Wells Bank breached its co-fiduciary duties under ERISA by knowingly participating in the Benefit Committee's and its members' fiduciary breaches and prohibited transactions and failing to take steps to prevent such breaches or prohibited transactions.

82.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff has no interests that are antagonistic to the claims of the Class.  Plaintiff understands that this matter cannot be settled without the Court's approval.  Plaintiff is not aware of another suit pending against Defendants arising from the same circumstances.

83.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous representation of the Class.  Plaintiff's counsel, McTigue & Veis LLP and Bailey & Glasser LLP, are experienced in class action and ERISA litigation.  Counsel have agreed to advance the costs of the

31

litigation contingent upon the outcome.  Counsel are aware that no fee can be awarded without the Court's approval.

84.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the class is impracticable.  The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.  Moreover, Defendants, as fiduciaries of the 401(k) Plan, were obligated to treat all Class members similarly as 401(k) Plan participants under written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiff is unaware of any difficulty in the management of this action as a class action.

85.     This Class may be certified under Rule 23(b).

A.     23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other

members not parties to the adjudication or substantially impair or impede
their ability to protect their interests.

B.      23(b)(2).  This action is suitable as a class action under 23(b)(2)
because the Defendants have acted or refused to act on grounds generally
applicable to the Class as a whole, thereby making appropriate final
injunctive, declaratory or other appropriate equitable relief with respect to
the Class.

C.      23(b)(3).  This action is suitable to proceed as a class action
under 23(b)(3) because questions of law and fact common to the members of
the Class predominate over individual questions, and this class action is
superior to other available methods for the fair and efficient adjudication of
this controversy.  Given the nature of the allegations, no class member has
an interest in individually controlling the prosecution of this matter, and
Plaintiff is aware of no difficulties likely to be encountered in the
management of this matter as a class action.

## VII. <u>CLAIMS FOR RELIEF</u>

### <u>COUNT I</u>

**Engaging in Prohibited Transactions by Causing the Plans to
Invest in Wells Fargo Affiliated Investment Products
(Violation of § 406 of ERISA, 29 U.S.C. § 1106 by the Committee Defendants)**

86.     Plaintiff incorporates the allegations contained in the previous
paragraphs of this Complaint as if fully set forth herein.

87.     At all relevant times, the Benefit Committee and its members
("Committee Defendants") acted as fiduciaries within the meaning of ERISA
§ 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with
respect to the management of the 401(k) Plan and the 401(k) Plan's assets.

88.     The Committee Defendants, by their actions and omissions in
authorizing or causing the 401(k) Plan to invest in the Wells Funds, and pay,
directly or indirectly, investment management and other fees in connection
therewith, caused the 401(k) Plan to engage in transactions that the Committee
Defendants knew or should have known constituted sales or exchanges of property
between the 401(k) Plan and parties in interest, the furnishing of services by parties
in interest to the 401(k) Plan, and transactions with fiduciaries in violation of
§§ 406(a)(1)(A), (C), and 406(b), 29 U.S.C. §§ 1106(a)(1)(A), (C), and 406(b).

89.     As a direct and proximate result of these prohibited transaction
violations, the 401(k) Plan, directly or indirectly, paid millions of dollars in
investment management and other fees that were prohibited by ERISA and
suffered millions of dollars in losses annually.

90.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C.
§ 1109(a), Committee Defendants are liable to restore all losses suffered by the

34

Plans as a result of the prohibited transactions and all profits earned by Wells

Fargo on the fees paid by the 401(k) Plan to Wells Fargo and its subsidiaries and

affiliates.

## COUNT II

**Breach of Duties of Loyalty and Prudence by Causing the 401(k) Plan to
Invest in Wells Funds Which Caused Losses to the 401(k) Plan
(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by the Committee Defendants)**

91.    Plaintiff incorporates the allegations contained in the previous

paragraphs of this Complaint as if fully set forth herein.

92.    At all relevant times, the Committee Defendants acted as fiduciaries

within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising

authority and control with respect to the management of the 401(k) Plan and the

401(k) Plan's assets.

93.    The Committee Defendants, by their actions and omissions in

authorizing or causing the 401(k) Plan to invest in Wells Funds, and to pay

investment management and other fees in connection therewith, to Wells Fargo

subsidiaries and affiliates, put Wells Fargo's financial interests ahead of the 401(k)

Plan's interests.  Thus, the Committee Defendants breached their duties of

prudence and loyalty to the 401(k) Plan under ERISA § 404(a)(1)(A), (B), 29

U.S.C. § 1104(a)(1)(A), (B).

35

94.    As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Funds fees and inferior returns.

95.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Committee Defendants are liable to restore all losses suffered by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT III

**Breach of Co-Fiduciary Duty by Knowingly Participating In The Benefit Committee's Breaches of Fiduciary Duty and Prohibited Transactions and Failing to Remedy Breaches of Fiduciary Duty and Prohibited Transactions (Violation of § 405 of ERISA, 29 U.S.C. § 1105 by Wells Fargo)**

96.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

97.    From at least 1999 through July 31, 2005, Wells Fargo was plan administrator, a named fiduciary, and the fiduciary with responsibility under the Plan Document for selecting and monitoring 401(k) Plan investment vehicles.

98.    Upon information and belief, Wells Fargo delegated to the Benefit Committee responsibility for selecting and monitoring 401(k) Plan investment vehicles for the period from at least 1999 through July 31, 2005.

99.    Wells Fargo, by delegating authority for monitoring and selection of 401(k) Plan investment options, had a duty to monitor the performance of its delegatee. Wells Fargo knew or should have known that its delegatee, the Benefit

Committee, was breaching its duties as described above.  However, Wells Fargo failed to take any steps to remedy or prevent these breaches, and in fact facilitated them by continuing its delegation.  Wells Fargo, by its actions  and omissions in knowingly participating in the Benefit Committee's breaches of fiduciary duty, failing to take steps to remedy such breaches, and failing to adequately monitor the performance of the Benefit Committee, violated ERISA § 405(a)(1), (3), 29 U.S.C. § 1105(a)(1), (3).

100.   Wells Fargo also facilitated the Benefit Committee's breach by providing, through its employees, conflicted and misleading evaluations of the 401(k) Plan's investment vehicles that made the Wells Funds appear to be more attractive investment vehicles than they were.

101.   As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Funds fees and inferior returns.

102.   Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Wells Fargo is liable to restore all losses suffered by the 401(k) Plan caused by its breaches of co-fiduciary duty.

## COUNT IV

**Wells Fargo Violated ERISA by Knowingly Participating in Breaches of Fiduciary Duty and Prohibited Transactions.**
**(§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) by Wells Fargo)**

103.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

104.   At all relevant times, Wells Fargo was a party in interest to the 401(k) Plan.  Wells Fargo, through its Board of Directors, appointed and monitored the members of the Benefit Committee.

105.   Wells Fargo, by its actions in participating in and abetting fiduciary breaches and prohibited transactions, caused the 401(k) Plan to invest in Wells Funds and to pay investment management and other fees in connection therewith, to Wells Fargo subsidiaries and affiliates.  A party in interest is subject to liability under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

106.   As a direct and proximate result of Wells Fargo's violations of ERISA, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Funds fees and inferior returns.

107.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) Wells Fargo is liable to disgorge all revenues received from the 401(k) Plan and Wells Fargo's earnings thereon.

38

## COUNT V

**(In the alternative) Breach of Duties of Loyalty and Prudence by Wells Fargo for the period from November 2, 2001 through July 31, 2005 by Causing the 401(k) Plan to Invest in Wells Funds (Violation of § 404 of ERISA, 29 U.S.C. § 1104)**

108.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

109.   From at least 1999 through July 31, 2005, Wells Fargo was plan administrator, a named fiduciary, and the fiduciary with responsibility under the Plan Document for selecting and monitoring 401(k) Plan investment vehicles.

110.   This claim is brought in the alternative to Count III (but only with respect to the period November 2, 2001 through July 31, 2005) , in the event Wells Fargo is found not to have delegated to the Benefit Committee responsibility for selecting and monitoring 401(k) Plan investment vehicles for the period from at least 1999 through July 31, 2005.

111.   Wells Fargo, by its actions and omissions in authorizing or causing the 401(k) Plan to invest in Wells Funds, and to pay investment management and other fees in connection therewith to Wells Fargo subsidiaries and affiliates, put Wells Fargo's financial interests ahead of the interests of 401(k) Plan participants and beneficiaries.  Thus, Wells Fargo breached its duties of prudence and loyalty to the 401(k) Plan under ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

39

112.   As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Funds fees and inferior returns.

113.   Pursuant to ERISA Wells Fargo is liable to restore all losses suffered by the 401(k) Plan caused by its breaches of fiduciary duty.

## COUNT VI

**Breach of Fiduciary Duties of Prudence and Loyalty by Wells Fargo for the Period from November 2, 2001 through July 31, 2005
(Violation of §§ 404  of ERISA, 29 U.S.C. § 1104)**

114.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

115.   Wells Fargo had a fiduciary duty to monitor the performance of the Benefit Committee in the performance of its duties in selecting and monitoring investment options for the 401(k) Plan.  It had this duty by virtue of the fact that members of the Benefit Committee were appointed by members of the Wells Fargo Board of Directors, and by virtue of the fact that from at least 1999 through July 31, 2005, Wells Fargo delegated to the committee responsibility to select and monitor investment options for the 401(k) Plan.

116.   Wells Fargo breached its duty to monitor, and its duties of prudence and loyalty, because it knew or should have known that the Benefit Committee was breaching its duties as described above, but failed to act.

40

117.   Wells Fargo also knew or should have known that (i) from 2001 through 2003 the Wells Mutual Funds participated in an illegal directed brokerage scheme that reduced returns to investors, and (ii) the Wells Asset Allocation Collective Trust was engaged in an excessively risky and imprudent securities lending process that eventually caused losses to investors in that trust.  These facts made the Wells Funds imprudent investment options for the 401(k) Plan. However, Wells Fargo breached its duties of prudence and loyalty, and its duty to monitor, by failing to communicate this material information to the Benefit Committee.

118.   Wells Fargo also breached its duties of prudence and loyalty by providing to the Committee Defendants, through its employees, conflicted and misleading evaluations of the 401(k) Plan's investment vehicles that made the Wells Funds appear to be more attractive investment vehicles than they were.

119.   As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Wells Funds fees and inferior returns.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.   Declare that the Committee Defendants have violated ERISA's prohibited transactions provisions;

41

2.     Declare that the Committee Defendants breached their fiduciary duties under ERISA;

3.     Declare that Wells Fargo knowingly participated in the Benefit Committee's and its members' violations of ERISA and failed to take steps to remedy those violations;

4.     Issue an order compelling defendants to disgorge all fees paid and incurred, directly or indirectly, to Wells Fargo subsidiaries and affiliates by the 401(k) Plan in connection with its investment in Wells Funds, including disgorgement of profits thereon;

5.     Issue an order compelling the Committee Defendants and Wells Fargo to restore all losses to the 401(k) Plan arising from their violations of ERISA;

6.     Order equitable restitution and other appropriate equitable monetary relief against Defendants;

7.     Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the 401(k) Plan, the appointment of independent fiduciaries to administer the 401(k) Plan, rescission of the 401(k) Plan's investments in Wells Funds, and enjoining Defendants from causing the 401(k) Plan to invest in Wells Funds;

8.    That this action be certified as a class action and that the Class be designated to receive the amounts restored or disgorged to the 401(k) Plan by Defendants and a constructive trust be established for distribution to the extent required by law;

9.    Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

10.    Award Plaintiffs their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

Award such other and further relief as the Court deems equitable and just.

DATED June 7, 2010.

Respectfully submitted:

By: *James A. Moore*

J. Brian McTigue *(admitted pro hac vice)*
Bryan T. Veis *(admitted pro hac vice)*
James A. Moore *(admitted pro hac vice)*
**McTIGUE & VEIS LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
bmctigue@mctiguelaw.com
bveis@mctiguelaw.com
jmoore@mctiguelaw.com
Tel:  (202) 364-6900
Fax: (202) 364-9960

Gregory Y. Porter *(admitted pro hac vice)*
**BAILEY & GLASSER LLP**
910 17th  Street, NW, Suite 800
Washington, DC 20006
gporter@baileyglasser.com
Tel: (202) 543-0226
Fax:  (202) 463-2103

Michael D. Lieder *(admitted pro hac vice)*
W. Iris Barber *(admitted pro hac vice)*
**SPRENGER & LANG**
1400 Eye St Ste 500
Washington , DC 20005
ibarber@sprengerlang.com
mlieder@sprengerlang.com
Tel: 202-772-1157

Deanna D. Dailey (MN Bar No. 293714)
**SPRENGER & LANG**
P.O. Box 25383
Woodbury, MN 55125
Phone: (612) 486-1818
Fax: (612) 871-9270

44

ddailey@sprengerlang.com

*Attorneys for Plaintiffs*